*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0181P (6th Cir.)
File Name: 00a0181p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT



BELVA DAVIS, Individually
and as Personal
Representative of the Estate
of Daniel R. Green, Deceased,
            *Plaintiff-Appellant,*

                    *v.*

WILLIAM JOSEPH MCCOURT,
            *Defendant,*

INTERSTATE ARMS,
INCORPORATED,
        *Defendant/Third-Party
        Plaintiff-Appellee,*

CHINA NORTH INDUSTRIES
CORPORATION (NORINCO),
            *Third-Party
        Defendant-Appellee.*

No. 98-2188

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-72583—John Feikens, District Judge.

Argued:  October 29, 1999

Decided and Filed:  May 31, 2000

Before:  SUHRHEINRICH and SILER, Circuit Judges;
RUSSELL, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  James D. Hubbert, BENNER & BILICKI, Farmington Hills, Michigan, for Appellant. William E. Clark, CLARK & KNIGHT, Southfield, Michigan, Michael H. Selter, FARKAS & MANELLI, Washington, D.C., for Appellees.  **ON BRIEF:**  Brian J. Benner, BENNER & BILICKI, Farmington Hills, Michigan, for Appellant. William E. Clark, CLARK & KNIGHT, Southfield, Michigan, Michael H. Selter, FARKAS & MANELLI, Washington, D.C., for Appellees.

_____

**OPINION**

_____

RUSSELL, District Judge. Plaintiff-Appellant Belva Davis appeals from the district court's grant of summary judgment in favor of Defendant Interstate Arms Incorporated and Third-Party Defendant China North Industries Corporation (NORINCO). The district court concluded that it had proper jurisdiction under 28 U.S.C. § 1441(d) and granted both Interstate's and NORINCO's motions for summary judgment finding that guns are simple tools and that the dangers associated with guns are open and obvious. The court concluded that under Michigan law there is no duty on the part of the manufacturer to warn or protect against any known

_____

[*] The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

---

trigger.  This is precisely the operation of the product which, according to its function, is reasonably expected. . . . In short, it performed according to its design.  Only a defective person would fail to realize the obvious dangers associated with these actions. . . . A loaded firearm must be considered dangerous. . . . It is an instrument of death.  That is its primary function.  Yet, only deliberative action will cause discharge.  When properly handled, the gun can be safely used.

*Id.* quoting *Taylor v. Gerry's Ridgewood, Inc.*, 490 N.E.2d 987, 991 (Ill.App.Ct. 1986).  Although Plaintiff argues that he did not know the gun was loaded, that fact is irrelevant.  Any gun safety course teaches and any reasonable gun user should know that no gun, loaded or unloaded, should ever be pointed at another human, much less pointed and mockingly fired. Accordingly, Michigan law does not require a manufacturer to design safety features to protect users from the dangers of a simple tool when the dangers are "obvious and inherent in the product's utility." *Treadway*, 950 F.Supp. at 1332.

Furthermore, the defendant's actions must be the proximate cause of Green's death.  Since McCourt intentionally aimed and fired the rifle at Green, his actions were a superseding cause of Green's death.  *See Raines*, F.Supp. at 826. Therefore, because there were no genuine issues of material fact in dispute and there was no legal basis to support Plaintiff's claims, the district court did not err in granting summary judgment in favor of Interstate and NORINCO.

**CONCLUSION**

**AFFIRMED**.

In this case, the parties do not dispute any genuine issue of material fact. Plaintiff submits that the defendants failed to prove that the gun used was a simple product. In support, Plaintiff contends that guns are highly mechanized because "[t]here's several bits and pieces" which need to be cleaned. *JA* at 465. Plaintiff also points to the numerous hours army and police men spend training with guns as evidence that guns are not simple products. *See id.* Thus, Plaintiff submits, a gun is "not a simple tool that you just put on the shelf and you take it out, and you fire it," despite the fact that this is precisely the factual scenario here. *See id.* Based on this argument, Plaintiff asserts the defendants still had a duty to warn McCourt about the possibility that a bullet may have been left in the chamber after the magazine clip was removed, or provide a safety device such as a load indicator. Caselaw holds the opposite.

Caselaw provides that a gun is a simple product.

The gun is not highly mechanized and is not power driven. It does not contain large, unwieldy parts that must be serviced and cause severe injury upon mere contact. Moreover, the normal and intended operation of the gun does not place the user in a dangerous position–defendant intended that users fire the gun not at themselves or innocent individuals, but at sporting targets, animals, or in the event of self-defense, at other humans. Just as a manufacturer cannot produce a hammer that will not mash, or a stove that will not burn, it is also true that a manufacturer cannot produce a gun that will not fire a bullet when it is, in fact, loaded and when the firing mechanism is deliberately engaged.

*Raines*, 757 F.Supp. at 825. Caselaw also provides that a gun presents an open and obvious danger to the suspecting user.

[The user] fully intended to perform the physical actions necessary to fire the weapon. He deliberately picked it up, inserted his finger through the trigger guard, pointed it at the head of [the decedent] and pulled the trigger. The loaded revolver fired when [the shooter] pulled the

dangers. Since Plaintiff failed to present any evidence to the contrary and failed to present any evidence that Green's death was caused by anything other than the deliberate, criminal act of McCourt, the district court granted summary judgment. Defendant argues that the court erred in finding it had jurisdiction and in granting summary judgment.

## BACKGROUND

In August 1994, sixteen-year-old Daniel Green and his friend Jimmy Ortiz stopped by Joseph McCourt's residence so that Ortiz could use the bathroom. McCourt, age 37, allowed Ortiz to enter the house and use the bathroom, but instructed Green to wait outside for his friend. While Ortiz was inside, McCourt retrieved his loaded MAK-90 semiautomatic rifle, removed the magazine clip and emptied out the shells. McCourt then reinserted the clip and walked outside to Green and pointed the rifle at him, "trying to scare him." *JA* at 147. McCourt had fired the gun before and knew how it worked. He understood that "[y]ou can't take the bullet . . . out by releasing the magazine once it's in the chamber." *JA* at 151. Although McCourt claims to have checked to make sure a bullet was not in the rifle's chamber, the gun discharged a bullet, striking Green in the head and killing him. McCourt's rifle was not equipped with a load indicator, nor was there any type of warning with the rifle that a bullet may still be lodged in the rifle's chamber after the magazine clip had been removed. A jury convicted McCourt of involuntary manslaughter the following April.

In 1996, Green's estate filed suit against McCourt, Interstate, and NORINCO in Circuit Court in Wayne County, Michigan. Plaintiff alleges that Interstate and NORINCO were liable for designing a defective product and for failing to warn McCourt that a bullet may still be in the rifle's chamber even after the magazine clip is removed. NORINCO removed the case to District Court pursuant to 28 U.S.C. § 1441(d). Plaintiff and NORINCO stipulated to dismiss NORINCO as a defendant without prejudice and the case was subsequently remanded back to Circuit Court in Wayne

County. Thereafter, Interstate filed a third-party complaint against NORINCO for contribution and indemnity. NORINCO removed the case to district court again and both NORINCO and Interstate filed motions for summary judgment.

The district court, relying on case law from other circuits, concluded that it had proper jurisdiction under 28 U.S.C. § 1441(d). The district court also stated that guns are simple tools and that the dangers associated with guns are open and obvious. The court concluded that under Michigan law there is no duty on the part of the manufacturer to warn or protect against any known dangers. Since Plaintiff failed to present any evidence to the contrary and failed to present any evidence that Green's death was caused by anything other than the deliberate, criminal act of McCourt, the district court granted both Interstate's and NORINCO's motions for summary judgment. This timely appeal followed.

## JURISDICTION AND REMOVAL

Removal jurisdiction is a question of law. This Court reviews motions to remand de novo. *See Michigan Affiliated Healthcare Sys., Inc. v. CC Systems Corp. of Michigan*, 139 F.3d 546, 549 (6th Cir. 1998).

Appellant argues that the district court erred in holding that 28 U.S.C. § 1441(d) allows a foreign third-party defendant to remove an action from state court to district court and as a result, erred in allowing removal in this case. This is an issue of first impression in this Court. We find that the district court did not err and that 28 U.S.C. § 1441(d) allows a foreign third-party defendant to remove an entire action from state court to district court.

The Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1602-1611, defines a foreign state to include a political subdivision of a foreign state or an agency or instrumentality of a foreign state. 28 U.S.C. § 1603(a). NORINCO is a state owned limited liability corporation under the law of the People's Republic of China. On appeal, Plaintiff does not

her position, he or she must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In order to establish a prima facie case in a products liability action, a plaintiff must demonstrate that the defendant manufacturer owed the plaintiff a duty of care. *See Raines v. Colt Indus., Inc.*, 757 F.Supp. 819, 823 (6th Cir. 1991), citing *Glittenberg v. Doughboy Recreational Indus., Inc.*, 462 N.W.2d 348 (Mich. 1990). Whether a duty exists is a question of law to be decided by the court. *See id.* Under Michigan law, a manufacturer owes no to duty to warn of an open and obvious danger associated with the use of a simple product. *See id.*; *Fisher v. Johnson Milk Co.*, 383 Mich. 158, 161 (Mich. 1970).

Michigan caselaw does not provide a clear test for determining the simplicity or complexity of a product. *See Raines*, 757 F.Supp. at 824. Michigan courts and the Sixth Circuit have, however, both contributed caselaw to clarify the status of the simple tool doctrine under Michigan law. The courts have categorized products as simple when one or both of the following conditions exist:

(1) The products are not highly mechanized, thus allowing the users to maintain control over the products;

(2) the intended use of the products does not place the users in obviously dangerous positions.

*Id.* at 825. Courts have found, for example, that hammers, knives, gas stoves, axes, buzz saws, propeller driven airplanes, trampolines, and guns are simple products that differ from complex products in their simplistic operation and/or design. *See id.*; *Treadway v. Smith & Wesson Corp.*, 950 F.Supp. 1326 (E.D.Mich. 1996). The dangers presented by a loaded gun have also been found to be open and obvious. *See id.*

the foreign party is brought in as a third-party defendant by another defendant. *See Surinam*, 974 F.2d at 1259. "Making a federal forum available to a foreign state furthers this goal, whether the foreign state is a defendant or a third-party defendant." *Id.*

Based on the history and purpose of 28 U.S.C. § 1441(d), as well as the persuasive case law found in other circuits, foreign third-party defendants should be allowed to remove an entire case from state court to district court. Accordingly, the district court here did not err in finding that it had jurisdiction pursuant to 28 U.S.C. § 1441(d).

## SUMMARY JUDGMENT

This Court reviews a district court's grant of summary judgment de novo. Thus, this Court examines the record in the same manner as the district court. *See Estate of Mills v. Trizec Properties*, 965 F.2d 113, 115 (6th Cir. 1992), citing *Qualicare-Walsh, Inc. v. Ward*, 947 F.2d 823, 825 (6th Cir. 1991).

Summary Judgment is available under Fed.R.Civ.P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Electrical Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys,* 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of the evidence. To support his or

challenge NORINCO's status as an instrumentality of a foreign state.

The FSIA gives federal courts jurisdiction over actions against foreign parties.[1] Congress enacted the FSIA in part to create a uniform body of law by establishing federal courts as the preferred forum for cases involving foreign states. *See* H.R. No. 94-1487, 94th Cong., 2d Sess. 32, reprinted in 1976 U.S.Code Cong. & Admin.News 6604, 6631; *In re Air Crash Disaster Near Roselawn, Indiana*, 96 F.3d 932, 942 (7th Cir. 1996). The FSIA includes Title 28 U.S.C. § 1441(d), which provides in relevant part:

> Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury.

Four circuits have addressed the issue of whether 28 U.S.C. § 1441(d) allows a foreign third-party defendant to remove an action from state court to district court. *See In re Air Crash Disaster Near Roselawn, Indiana*, 96 F.3d 932 (7th Cir. 1996); *In re Surinam Airways Holding Co.*, 974 F.2d 1255 (11th Cir. 1992); *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095 (9th Cir. 1990); *Nolan v. Boeing Co.*, 919 F.2d 1058 (5th Cir. 1990). In each case, the circuit courts have agreed that § 1441(d) not only authorizes the removal of an action involving a foreign third-party defendant, but also that it authorizes "the removal of the entire case, even if there are nonforeign defendants." *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 333 (7th Cir. 1995); *see Chuidian*, 912 F.2d at 1098; *Surinam*, 974 F.2d at 1260; *Nolan*, 919 F.2d at 1066. The Sixth Circuit has not directly addressed this issue, but in

---

[1] The Sixth Circuit has recognized that FSIA provides an "absolute right of removal to the federal courts by the foreign state" under § 1441(d). *In re Delta America Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990).

dicta noted that if removal by a foreign defendant is proper under 1441(d), then "the entire action against all defendants is removed to federal court." *In re Delta America Re Ins., Co.*, 900 F.2d 890, 891 n.1 (6th Cir. 1990), citing *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1375 (5th Cir. 1980).

Plaintiff urges this Court to break from the other circuits and adopt the position that 28 U.S.C. § 1441(d) does not permit foreign parties who are brought in as third-party defendants to remove the case to federal court. To reach this holding, Plaintiff asserts that this Court should interpret 28 U.S.C. § 1441(d) in light of the well-pleaded complaint doctrine. The well-pleaded complaint doctrine provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *See Her Majesty the Queen v. City of Detroit*, 874 F.2d 332, 338 (6th Cir. 1989). Accordingly, Plaintiff asserts that only a voluntary act of the plaintiff can remove a suit. *See Great Northern Ry Co. v. Alexander*, 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed 713 (1918). Since the plaintiff here did not bring suit directly against NORINCO, Plaintiff argues that this case should be remanded to state court.

Plaintiff notes that 28 U.S.C. § 1441(d) partially departs from the traditional well-pleaded complaint rule as it specifically allows for removal by a foreign state rather than by the allegation of a plaintiff's complaint.[2] The Plaintiff argues that the control over the action remains with the plaintiff under his interpretation of § 1441(d), because the plaintiff chooses the defendants. Plaintiff argues that § 1441(d) does not apply here, however, because the statute limits itself to actions brought "against a foreign state." According to Plaintiff's analysis, because the plaintiff did not directly bring the case against the foreign third-party

---

[2] "Any civil action brought in a State Court against a foreign state as defined by Section 1603(a) of this title may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending."

defendant, there is no right of removal. Any other decision, Plaintiff asserts, would violate the well-pleaded complaint rule and allow removal of an action that was not a voluntary act[3] of the plaintiff.[4]

Both the statutory interpretation of "civil action" and history behind the FSIA lead this Court to follow the other circuits in holding that 28 U.S.C. § 1441(d) not only authorizes the removal of an action involving a foreign third-party defendant, but also that it authorizes the removal of the entire case, even if there are nonforeign defendants. According to the Revision Note of § 1441, the words "civil action" have replaced the words "case," "cause," "suit," and the like in accordance with Federal Rules of Procedure 2 and 81(c). *See Nolan*, 919 F.2d at 1066. Rule 2 unequivocally states, "[t]here shall be one form of action known as a 'civil action.'" Accordingly, the words "civil action" must encompass an entire civil case including claims filed by plaintiffs and claims filed by third-party defendants. *See Surinam*, 974 F.2d at 1260.

The purpose and legislative history behind FSIA reinforce the position that a foreign third-party defendant may remove the entire case to district court under 28 U.S.C. § 1441(d). FSIA seeks to provide uniformity in the treatment of foreign sovereigns and to remove any local bias that might be present at a jury trial in a state court. *See Nolan*, 919 F.2d at 1065; *Delta* 900 F.2d at 893; H.R. No. 94-1487, 94th Cong., 2d Sess. 32, reprinted in 1976 U.S.Code Cong. & Admin. News 6604, 6631. Since foreign third-party defendants would face the same types of prejudices as foreign defendants, it follows that 1441(d) authorizes the removal of the entire case, even if

---

[3] The voluntary-involuntary rule "conditions removability on voluntary actions of a plaintiff, rather than factors beyond a plaintiff's control." *Hollenbeck v. Burroughs Corp.*, 664 F.Supp. 280, 281 (E.D.Mich. 1987).

[4] Plaintiff notes that 1441(d) contains no mention of an exception to the well-pleaded complaint rule.