**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0807n.06

No. 10-2660

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 26, 2012**
LEONARD GREEN, Clerk

| | |
|---|---|
| KEITH DAWSON, | ) |
| | ) |
|     **Plaintiff-Appellee,** | ) |
| | )   **ON APPEAL** FROM THE UNITED |
| **v.** | )   STATES DISTRICT COURT FOR THE |
| | )   EASTERN DISTRICT OF MICHIGAN |
| **RENT-A-CENTER INC.,** | ) |
| | ) |
|     **Defendant-Appellant.** | ) |

BEFORE:    **MERRITT and ROGERS, Circuit Judges; POLSTER, District Judge.**[*]

    **MERRITT, Circuit Judge.** Defendant Rent-A-Center Inc. moved to compel arbitration of an employment law dispute between Rent-A-Center and Plaintiff Keith Dawson. The district court denied this motion and Rent-A-Center appeals. Dawson agreed to arbitrate with his former employer Rent-Way, Inc., which subsequently merged with and became part of Rent-A-Center. Dawson denies, however, that the arbitration agreement remained binding on either party after the merger. The district court agreed with Dawson because it found that there was no "continuity of business" between Rent-Way and Rent-A-Center. We reverse and remand to the district court to compel arbitration.

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

## I. Background

Dawson worked for Rent-Way, a rent-to-own company, beginning in 2001. On November 15, 2006, Rent-Way merged with Rent-A-Center. Dawson worked in similar, though advancing, capacities for both companies. Rent-A-Center terminated him on July 21, 2009 for violating its "no-call, no-show" policy. Dawson claims that in fact he was terminated on account of his race.[1]

In September 2005, Rent-Way announced a new arbitration agreement called "Solutions," which was meant to provide a comprehensive procedure for resolving disputes between Rent-Way and its employees. The Solutions Agreement was to take effect on October 1, 2005. Rent-Way notified its employees, including Dawson, of the Solutions Agreement by: (1) sending a letter to each employee's house; (2) sending a memorandum that included the entire Agreement to each store manager; (3) asking each store manager to confirm that each employee received a copy of the agreement in the mail and to provide those who did not with a copy; and (4) beginning on October 1, 2005, posting the Solutions Agreement on Rent-Way's intranet. The Solutions Agreement stated that, after October 1, 2005, applying for employment, accepting or continuing employment, or accepting any promotion, pay increase, transfer, bonus, or other benefit of employment would indicate consent to resolve work-related disputes exclusively through arbitration. In its overview, the Solutions Agreement defined Rent-Way broadly as "Rent-Way, Inc., its present and future parents, subsidiaries, affiliates, successors and assigns, and their directors and executive officers."

---

[1] The facts that give rise to Dawson's employment law claims are only marginally relevant to this appeal, which deals only with the motion to compel arbitration. As a result, we will forgo a full recitation of the facts related to these claims. For a fuller account, *see Dawson v. Rent-A-Center, Inc.*, No. 1:10-12655, 2010 WL 4982806, at *1-4 (E.D. Mich. Dec. 2, 2010).

On November 15, 2006, Rent-Way became a subsidiary of Rent-A-Center East, Inc., which in turn is a subsidiary of Rent-A-Center. Thus, beginning in 2006, Rent-A-Center employed Dawson. After the merger, Rent-A-Center operated in the same industry, continued to use Rent-Way's stores, and continued to employ Rent-Way's employees in their same capacities. Rent-A-Center did not, however, declare that the Solutions Agreement remained in effect. Rent-A-Center also promulgated new employee manuals and policies; replaced Rent-Way's computer system with its own; assigned Dawson to a new HR representative; and installed new pricing, promotion, and advertising systems. None of the new materials mentioned the Solutions Agreement.

After he was terminated on July 21, 2009, Dawson filed an action in state court on June 3, 2010 alleging that Rent-A-Center wrongfully discharged him because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. §§ 1981 and 1988; and Michigan's Elliot-Larsen Civil Rights Acts, M.C.L. § 37.2101 *et seq.* Rent-A-Center removed the action to the Eastern District of Michigan on July 2, 2010 on the basis of federal question and diversity jurisdiction. Rent-A-Center then filed a motion to compel arbitration under the Solutions Agreement and to dismiss in lieu of an answer on July 23, 2010. Dawson responded on August 12, 2010. The district court denied the motion to compel arbitration and to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or 56(a) on December 2, 2010. Rent-A-Center appealed. We have jurisdiction over this interlocutory appeal pursuant to 9 U.S.C. § 16(a)(1), which makes an order refusing to compel arbitration immediately appealable.

## II. Standard of Review

The district court held that Rent-A-Center had failed to prove as a matter of law that it was entitled to enforce the Solutions Agreement and compel arbitration. Because the district court denied the motion to compel arbitration and to dismiss after it "reviewed the parties' submissions," this court decides *de novo* whether the moving party was entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a); *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000); *Dawson*, 2010 WL 4982806, at *1. For summary judgment to be appropriate, the moving party must show that there is no dispute of material fact. *See* FED. R. CIV. P. 56(a). When making this decision, the district court must resolve ambiguities and draw inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Discussion

The question on appeal is whether any enforceable agreement requires Rent-A-Center and Dawson to arbitrate their dispute. If so, the district court was required to stay any litigation, *see* 9 U.S.C. § 3, and to compel arbitration if either party refused to comply with the agreement, *see* 9 U.S.C. § 4. A court must keep in mind the "'liberal federal policy favoring arbitration agreements.'" *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). All doubts regarding arbitrability must be resolved in favor of arbitration. *See Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003). Because disputes over arbitrability are usually questions of contract formation and interpretation, federal courts should apply state law so long as

it is generally applicable to all contracts. *See Seawright v. Am. Gen. Fin. Servs.*, Inc., 507 F.3d 967, 972 (6th Cir. 2007); *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003).

In 2005, Dawson consented, in the Solutions Agreement, to arbitrate disputes with Rent-Way. A meeting of the minds, or mutual assent, is an essential element of contract formation in Michigan. *See Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). This does not require Dawson to have signed the Solutions Agreement; he demonstrated his assent by continuing to work for Rent-Way after October 1, 2005. Michigan law permits parties to accept offers through conduct. *See Pakideh v. Franklin Commercial Mortg. Group, Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995). A federal district court in Michigan has also found that continued employment, after notice, was sufficient to show assent to an arbitration agreement. *See Johns v. Sterling Jewelers, Inc.*, No. 06-14327, 2006 WL 3759905, at *1 (E.D. Mich. Dec. 20, 2006). Finally, this court has held that, under Tennessee contract law, an employee who knowingly continued employment validly assented to a new arbitration agreement. *See Seawright*, 507 F.3d at 970. The Solutions Agreement validly bound both Dawson and Rent-Way to arbitrate their disputes.

The only remaining question is whether the Solutions Agreement also forces Dawson to arbitrate with Rent-A-Center. By its terms, the agreement bound Dawson, Rent-Way, and Rent-Way's "successors." Rent-A-Center qualifies as a "successor" to Rent-Way under the plain meaning of the term. *See Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005). Black's Law Dictionary defines "successor" as "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." BLACK'S LAW DICTIONARY (9th ed. 2009). Rent-Way was consolidated

by merger into Rent-A-Center's corporate structure, and Michigan corporate law dictates that, because the transaction was a merger, the successor assumed all of its predecessor's liabilities–in this case Rent-Way's rights and obligations under the Solutions Agreement. *See Foster v. Cone-Blanchard Mach. Co.*, 597 N.W.2d 506, 509 (Mich. 1999). The Michigan Business Corporation Act likewise requires that, in a merger, the surviving corporation assume all rights and liabilities of the disappearing corporation. *See* MICH. COMP. LAWS § 450.1724(1)(d). Because Rent-A-Center qualifies as Rent-Way's "successor" by merger, Dawson consented in 2005 to arbitrate with Rent-A-Center.

Instead of stopping its analysis once it determined that Rent-A-Center was Rent-Way's successor under the Solution's Agreement, the district court asked whether there was a sufficient "continuity of the enterprise" between Rent-Way and Rent-A-Center so that it would be fair to burden Rent-A-Center with Rent-Way's contractual obligations. *See Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873, 881, 884 (Mich. 1976). This analysis was superfluous because the continuity of enterprise test applies only to consolidations accomplished by a purchase of assets rather than by a merger.[2] Under Michigan law, the nature of the transaction determines the successor's liability. When the transaction is a merger, the surviving corporation generally assumes the liabilities of its predecessor. *See Foster*, 597 N.W.2d at 509. On the other hand, when the successor purchases the assets of another corporation, the successor usually remains unencumbered by its predecessor's

---

[2] The court below may have applied the continuity of enterprise test because a district court in the Western District of Michigan applied it under very similar factual circumstances. *See Kettles v. Rent-Way, Inc.*, No. 1:09-cv-230, 2009 WL 1406670 at * 11-12 (W.D. Mich. May 18, 2009).

obligations. *See id.* Recognizing that this test sometimes elevates form over function, the Michigan Supreme Court created the continuity of enterprise test as a "departure from the traditional rule of nonliability for corporate successors who acquire the predecessor through a purchase of assets." *Id.* In other words, the continuity of enterprise test expanded successor liability when the surviving corporation purchased the assets of its predecessor.

But Rent-A-Center acquired Rent-Way by merger, and the traditional merger rule already forces Rent-A-Center to accept Rent-Way's contractual liabilities along with its benefits. *See Turner*, 244 N.W.2d at 875 ("Where the corporate transfer involves . . . a merger . . . the law is clear that liability attaches to the consolidated or acquiring corporation."); *see also* MICH. COMP. LAWS § 450.1724(1)(d). Neither the district court nor Dawson suggests that the continuity of enterprise test somehow replaced the traditional rule for mergers. The new test is merely an expansion to successor liability when consolidation is accomplished by asset purchase. *See Oliver v. Perry*, No. 296871, 2011 WL 2204128, at *6 (Mich. Ct. App. June 7, 2011). Because Rent-A-Center became Rent-Way's successor in a merger, the district court should have applied the traditional rule and held that Rent-A-Center assumed Rent-Way's rights and liabilities under the Solutions Agreement.[3]

Dawson largely ignores the issue of whether Rent-A-Center qualifies as Rent-Way's successor, under any test, within the meaning of the Solutions Agreement. Instead he argues that he

---

[3] Even if the district court was correct to apply the continuity of enterprise test, its conclusion is questionable that changes in "pricing, promotions, and advertising . . . as well as the computer programs" along with Dawson's "new HR representative . . . new employee handbook and online policies" meant that there was no continuity of enterprise between Rent-A-Center and Rent-Way. *Dawson*, 2010 WL 4982806, at *8. Continuities in "management, personnel, physical location[s], assets, and general business operations . . . ." appear more significant than the largely internal discrepancies relied on by the district court.

cannot be required to arbitrate with Rent-A-Center because it never notified him of its offer to arbitrate future disputes or stipulated the form of acceptance. As a result, his continued employment with Rent-A-Center cannot act as consent. In effect, Dawson is arguing that only a new arbitration agreement that identified Rent-A-Center by name as a party would have been enforceable. But he cannot escape the Solutions Agreement simply because the precise identities of all parties bound by it could not be determined at execution. In other contexts, Michigan state courts read the language of arbitration contracts broadly to encourage arbitration between disputants that were not identified by name at the time of the agreement. *See Lyddy v. Dow Chem. Co.*, No. 290052, 2010 WL 173643, at *2 (Mich. Ct. App. Jan. 19, 2010) (compelling arbitration between a plaintiff and third party beneficiary of the arbitration agreement because the latter was a "company . . . for whom or with whom [plaintiff's employer] has done or may be doing work."); *Rooyakker & Sitz, PLLC v. Plante & Moran, PLLC*, 742 N.W.2d 409, 421 (Mich. Ct. App. 2007) (requiring arbitration of plaintiff's "dispute or controversy arising out of or relating to" his past employment even though defendants were not named in the arbitration contract). In 2005, Dawson consented in the Solutions Agreement to arbitrate with Rent-Way and its future successors. In 2006, Rent-A-Center became such a successor by merger and was entitled to enforce the Solutions Agreement without further action.[4]

---

[4]Dawson also argues on appeal that because he did not receive notice of a potential arbitration agreement between Rent-A-Center and its employees that contained a jury trial waiver, any waiver of his right to a jury trial could not possibly have been "knowing and voluntary." *See High v. Capital Senior Living*, 594 F. Supp. 2d 789, 800 (E.D. Mich. 2008). There was a clear waiver, however, in the Solutions Agreement, which continued to require arbitration between Dawson and his employer even after the merger. Thus, the jury trial waiver also applied to all future disputes between Dawson and Rent-A-Center.

Dawson also argues that, even if a new contract with offer and acceptance was not required before Rent-A-Center could force him to arbitrate, he was at least entitled to notice of Rent-A-Center's intent to arbitrate future disputes as required by Michigan employment law. Dawson compares the current situation to cases discussing employers' decisions to change employment relationships from "just cause" termination to termination at will. These cases hold that, although the employer can change its employment policies at any time, for the change to be effective, the employer must give its employees notice of the change. *See In re Certified Question (Bankey v. Storer Broad. Co.)*, 443 N.W.2d 112 (Mich. 1989); *Ferris v. Trinity Health Corp.*, No. 258122, 2006 WL 2271307 (Mich. Ct. App. Aug. 8, 2006). This rule applies whether the employer is the same one that issued the just cause discharge policy, *see Bankey*, 443 N.W.2d at 113, or whether the employer is a successor by merger or by a purchase of the assets of the issuing entity, *see Ferris*, 2006 WL 2271307, at *3. Dawson submits that there is no difference between these employment policies and the Solutions Agreement, and, by promulgating its own employment policies, Rent-A-Center was notifying Dawson that it planned to depart from Rent-Way's policies, including its policy requiring arbitration of disputes.

Dawson overlooks the crucial difference between employment policies and contracts to arbitrate. Employers can generally unilaterally modify the former, *see Bankey*, 443 N.W.2d at 121, while neither employer nor employee can unilaterally alter the terms of arbitration agreements, *see* 9 U.S.C. § 2. Because employers can modify their employment policies at any time, Michigan courts require them to notify their employees before any change. This notice is the sole protection an employee receives from a detrimental change in his or her status. *See Bankey*, 443 N.W.2d at 120.

On the other hand, notice of an arbitration agreement's continued effect is not required because the employee affirmatively assented to its terms. He or she gains the benefits of arbitration and is protected by what the employer also gave up in the same agreement, the right to litigate. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122-123 (2001).

The distinction between these two concepts is recognized by the Michigan Supreme Court, *see Heurtebise v. Reliable Bus. Computers*, 550 N.W. 2d 243 (Mich. 1996), and is likely the reason that Rent-Way's employment policies and the Solutions Agreement were separated into different documents from the beginning. Rent-Way probably wanted to avoid confusing its arbitration agreement, which must be contractual, and its employment policies, which frequently are not contractual. *See id.* at 247. By separating the two, Rent-Way retained the freedom to modify its employment policies without having to follow the more restrictive procedures required for contract modification. Dawson is incorrect to say that Rent-A-Center, regardless of its status as Rent-Way's successor, was required to notify him of the continuing viability of the Solutions Agreement. Because he was not entitled to renewed notice, it is also irrelevant that Dawson did not understand the structure of the transaction between Rent-Way and Rent-A-Center. The Solutions Agreement was a valid contract that bound Dawson, Rent-Way, and Rent-Way's successors to arbitrate disputes. It remained binding after Rent-A-Center became Rent-Way's successor by merger without formal assumption or notification of its continuing effect. Rent-A-Center is entitled to compel arbitration.

We reverse and remand to the district court to compel arbitration.