# United States Court of Appeals
## For the First Circuit

No. 21-1918

CARIBE CHEM DISTRIBUTORS, CORP.,

Plaintiff, Appellee,

v.

SOUTHERN AGRICULTURAL INSECTICIDES, INC.,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Barron, Chief Judge,
Kayatta and Montecalvo, Circuit Judges.

Ricardo F. Casellas Sánchez, with whom Carla S. Loubriel Carrión and Casellas Alcover & Burgos, PSC were on brief, for appellant.
Edgardo Santiago-Torres, with whom Santiago-Torres Law Offices, LLC was on brief, for appellee.

March 13, 2024

KAYATTA, **Circuit Judge**. In this opinion we adopt the so-called "voluntary/involuntary" rule to determine that the removal of this lawsuit from Commonwealth to federal court was improper. A Puerto Rican company, Caribe Chem ("Caribe"), filed a complaint in a Puerto Rico court against a Florida company, Southern Agricultural Insecticides ("Southern"), and another Puerto Rico company and its principal, a citizen of Puerto Rico. As filed the lawsuit was not initially removable to federal court, because there was no complete diversity, no federal question, and no other basis for asserting federal-court jurisdiction. In due course, the two Puerto Rican defendants successfully procured an order dismissing them from the lawsuit on statute-of-limitations grounds over Caribe's objection. About thirteen days later Southern removed the case to federal court, citing the now-complete diversity of the remaining parties. The district court rejected the removal, and granted Caribe Chem's motion to remand to Commonwealth court. Southern thereupon appealed the remand order.

## I.

Before proceeding to the merits, we note that Caribe questions whether the district court's remand order is appealable under 28 U.S.C. § 1447(d), given that the district court characterized its order as relying on a defect in removal procedure. See 28 U.S.C. § 1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on

- 2 -

appeal or otherwise . . . ."); <u>BP P.L.C.</u> v. <u>Mayor of Balt.</u>, 141 S. Ct. 1532, 1541 (2021) (explaining that 28 U.S.C. § 1447(d) bars appellate review of "remand orders premised on a lack of subject matter jurisdiction or a defect in removal procedure").

Neither party's brief treats this issue in a manner that facilitates its resolution. And because "[t]his case poses a question of statutory, not Article III, jurisdiction," and therefore "the question of jurisdiction 'need not be resolved if a decision on the merits will favor the party challenging the court's jurisdiction,'" we will assume that we have appellate jurisdiction for the purposes of resolving Southern's appeal.[1] <u>Doe</u> v. <u>Town of Lisbon</u>, 78 F.4th 38, 45 (1st Cir. 2023) (quoting <u>Akebia Therapeutics, Inc.</u> v. <u>Azar</u>, 976 F.3d 86, 92 (1st Cir. 2020)).

**II.**

Sometimes, as here, a lawsuit that initially lacks complete diversity of citizenship between the plaintiff and the

---

[1] Caribe also states without elaboration that we should abstain from exercising jurisdiction over this appeal under so-called <u>Younger</u> abstention. The Supreme Court has made clear that "[c]ircumstances fitting within the <u>Younger</u> doctrine . . . are 'exceptional'" and include "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." <u>Sprint Commc'ns, Inc.</u> v. <u>Jacobs</u>, 571 U.S. 69, 73 (2013) (internal quotations omitted) (citing <u>New Orleans Pub. Serv., Inc.</u> v. <u>Council of New Orleans</u>, 491 U.S. 350, 367-68 (1989)). As Southern offers no reason why this private action would fall into any of these "exceptional" categories, we decline to apply <u>Younger</u> abstention.

- 3 -

defendants can acquire complete diversity when all nondiverse parties are dismissed from the action. The so-called voluntary/involuntary rule governs whether such a change in the make-up of the parties allows the remaining defendants to remove the case to federal court under 28 U.S.C. § 1446. For example, when a plaintiff amends a complaint to drop the only nondiverse defendant, the voluntary/involuntary rule treats the lawsuit as removable (assuming the amount in controversy requirement is satisfied). Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co., 50 F.4th 469, 473-74 (5th Cir. 2022). But if the nondiverse defendants are dismissed from the action without plaintiff's acquiescence, the rule generally treats the lawsuit as not removable. Id.

The origins of the rule lie in the Supreme Court's decision in Powers v. Chesapeake & Ohio Railway Co., 169 U.S. 92 (1898). Powers was a tort action in which, after the deadline for removal had passed, the plaintiff "discontinued his action against" the nondiverse individual defendants, "leaving it an action between citizens of different states." Id. at 98. The defendants then attempted to remove the case to federal court, and the question became whether the removal was untimely. The Court reasoned that "to warrant a removal from a court of a state into a circuit court of the United States, . . . the necessary diverse citizenship . . . must exist." Id. at 99-100. It noted that "so

- 4 -

long as there does not appear of record to be any removable controversy, no party can be entitled to remove it." Id. at 100. But, it cautioned, "it by no mea[ns] follows, when the case does not become in its nature a removable one until after the time mentioned in the act has expired, that it cannot be removed at all." Id. at 98-99. That would "utterly defeat all right of removal in many cases." Id. at 100. Instead, the clock on removability starts ticking "as soon as the action assumes the shape of a removable case," which in Powers occurred when the plaintiff voluntarily terminated all the nondiverse defendants from the suit. Id. at 101.

Two years later in Whitcomb v. Smithson, the Supreme Court clarified that where the nondiverse defendant was dismissed by the state court in an order "adverse to plaintiff, and without his assent," the dismissal "did not operate to make the cause then removable." 175 U.S. 635, 638 (1900). Taken together, these cases articulate the rule that while "a case may become removable . . . upon the subsequent discontinuance of the action by the plaintiff against the defendants, citizens of the same state with the plaintiff . . . [] a different effect [is] ascribed to a ruling of the court dismissing the action as to one of the defendants than to a discontinuance by the voluntary act of the plaintiff." Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co., 215 U.S. 246, 250 (1909); see also Self v. Gen. Motors Corp., 588

- 5 -

F.2d 655, 657-59 (9th Cir. 1978) (tracing the history of the voluntary/involuntary rule).

The rule has been adopted in some form by the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits -- which by our count is every circuit to have considered the issue. See Quinn v. Aetna Life & Cas. Co., 616 F.2d 38, 40 n.2 (2d Cir. 1980) (noting the "line of cases holding that . . . the involuntary dismissal of non-diverse parties does not make an action removable"); Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1166 (4th Cir. 1988) ("[A] case may . . . not be removable depending on whether the non-diverse party is eliminated from the state action by voluntary or involuntary dismissal."); Weems v. Louis Dreyfus Corp., 380 F.2d 545, 547-48 (5th Cir. 1967) (adopting the rule); Davis v. McCourt, 226 F.3d 506, 510 n.3 (6th Cir. 2000) (same); Poulos v. Naas Foods, Inc., 959 F.2d 69, 72 (7th Cir. 1992) (concluding that the voluntary/involuntary rule survived Congress's 1949 enactment of 28 U.S.C. § 1446(b)); In re Iowa Mfg. Co., 747 F.2d 462, 464 (8th Cir. 1984) (same); California ex rel. Lungren v. Keating, 986 F.2d 346, 348 (9th Cir. 1993) ("[W]hen an event occurring after the filing of a complaint gives rise to federal jurisdiction, the ability of a defendant to remove is not automatic; instead, removability is governed by the 'voluntary/involuntary rule.'" (citation omitted)); DeBry v. Transamerica Corp., 601 F.2d 480, 486-88 (10th Cir. 1979) (applying

the voluntary/involuntary rule); Insinga v. LaBella, 845 F.2d 249, 254 (11th Cir. 1988) (adopting the voluntary/involuntary rule).

District courts in Massachusetts, New Hampshire, and Maine have similarly applied the voluntary/involuntary rule. See Irabor v. Lufthansa Airlines, 427 F. Supp. 3d 222, 229 (D. Mass. 2019) (applying the voluntary/involuntary rule); Me. Emps. Mut. Ins. Co. v. Yates Ins. Agency, 52 F. Supp. 2d 135, 136 (D. Me. 1999) (same); Longden v. Philip Morris, Inc., No. Civ. 03-353-M, 2003 WL 21975365, at *2 (D.N.H. Aug. 19, 2003) (same).

Courts typically identify two reasons for the rule. The first is avoidance of a yo-yo effect, whereby "[r]emoval following an involuntary dismissal may be only temporary: the plaintiff may appeal the dismissal in state court, and success on appeal would lead to the reinstatement of the non-diverse party, destroying federal jurisdiction and compelling remand to the state court." Poulos, 959 F.2d at 72; see also E.I. DuPont de Nemours, 863 F.2d at 1166 (same). By finding removal proper only where the plaintiff has unilaterally -- and thereby irreversibly -- dismissed all nondiverse defendants, courts can ensure that subsequent decisions on appeal will not destroy the basis for federal jurisdiction, thus requiring remand to the state court.

The second reason sounds in "a general principle of deference to the plaintiff's choice of forum." Poulos, 959 F.2d at 72. By "[a]llowing removal only when the plaintiff voluntarily

- 7 -

dismisses a defendant," a court can ensure that "the plaintiff will not be forced out of state court without his consent." Id. As the Supreme Court explained, the "obvious principle" of the line of cases setting forth the voluntary/involuntary rule "is that . . . the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case . . . and that this power to determine the removability of his case continues with the plaintiff throughout the litigation." Great N. Ry. Co. v. Alexander, 246 U.S. 276, 282 (1918).[2]

This broad and long-standing precedential authority -- as well as the confounding procedural complexities the rule eliminates -- weighs heavily in favor of adopting the voluntary/involuntary rule in this case. Southern disagrees.

First, it argues that Congress abrogated the voluntary/involuntary rule in 1949 when it codified 28 U.S.C. § 1446(b)(3). Section 1446(b)(3) states that "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an . . . order or other paper from which it may first be ascertained that the case is one which

---

[2] Of course, this power does not include the ability to defeat removal by fraudulently joining nondiverse defendants. Hoyt v. Lane Constr. Corp., 927 F.3d 287, 295 (5th Cir. 2019) ("The judicially created voluntary-involuntary rule is itself subject to a judicially created exception for improper joinder." (citing Great N. Ry. Co., 246 U.S. at 282)).

is or has become removable."  Southern contends that the word "order" means only "a command or direction authoritatively given," Order, Black's Law Dictionary (3d ed. 1933), or "an act of a court," Bolger v. Utermohlen, 485 F. Supp. 3d 588, 592 (E.D. Pa. 2020), and makes no distinction between orders to which the plaintiff objects and those to which the plaintiff acquiesces.

But the text of the statute refers not just to an "order," but to an "order . . . from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  So the question remains -- has an action become removable if the order was entered over the plaintiff's objections?  And as we have described, the common law in 1949 was that an action did not become removable upon the entry of such an order.  See, e.g., Great N. Ry. Co., 246 U.S. at 281 (holding in 1918 that "[i]t is also settled that a case . . . cannot be converted into a removable one . . . by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff").

This is not to say that section 1446(b)(3) cannot be read more broadly to encompass any order that turns an action into one that satisfies the statutory requirements for subject matter jurisdiction in a federal court.  But "when a statute addresses issues previously governed by common law, an inquiring court should

presume that -- except where explicit changes are made -- the legislature intended to retain the substance of preexisting law." In re PHC, Inc. S'holder Litig., 894 F.3d 419, 433 (1st Cir. 2018) (citing Kirtsaeng v. John Wiley & Sons, Inc., 568 U.S. 519, 538 (2013)). Indeed, we have proof that this was the case with section 1446(b). When the bill was introduced in the House, it was explained that it would effect "not a single substantive change in the law. This is purely corrective." 95 Cong. Rec. 6249 (1949) (statement of Rep. Joseph Bryson).

The notes of revision that accompanied the statutory change further support this view. They state:

> The second paragraph of the amendment to subsection (b) is intended to make clear that the right of removal may be exercised at a later stage of the case if the initial pleading does not state a removable case but its removability is subsequently disclosed. This is declaratory of the existing rule laid down by the decisions. (See for example, Powers v. Chesapeake etc., Ry. Co., 169 U.S. 92).

28 U.S.C. § 1446 (Historical and Revision Notes, 1949 Act). As we have explained, the origins of the voluntary/involuntary rule can be traced back to the decision in Powers, suggesting that Congress was aware of, had no intention of abrogating -- and perhaps even implicitly codified -- the voluntary/involuntary rule when it passed section 1446 into law.

- 10 -

Southern responds that Congress cited to <u>Powers</u> only for the proposition that a case not removable on the initial pleadings may become removable at a later stage of the litigation. But Congress "legislate[s] against a background of common-law adjudicatory principles." <u>Minerva Surgical, Inc.</u> v. <u>Hologic, Inc.</u>, 141 S. Ct. 2298, 2307 (2021) (quoting <u>Astoria Fed. Sav. & Loan Ass'n</u> v. <u>Solimino</u>, 501 U.S. 104, 108 (1991)). We can surely presume it to have been aware of the line of cases starting with <u>Powers</u> that developed the voluntary/involuntary rule when it drafted section 1446(b). Indeed the notes of revision refer to "decisions," in the plural, and reference <u>Powers</u> as an example of the cases codified by the law. This suggests that Congress was gesturing towards the line of cases created by <u>Powers</u> rather than <u>Powers</u> in isolation. Construing Congress to have silently adopted only half of the rule articulated in a line of Supreme Court cases contravenes our commonsense rules of interpretation.

We therefore follow the lead of the other circuits, as well as the common practice of district courts in this circuit, in holding that the voluntary/involuntary rule precludes removal where the nondiverse defendants are dismissed in the absence of plaintiff's voluntary action.

## III.

Southern next switches tacks. It argues that by declining to appeal the trial court's dismissal order Caribe

- 11 -

rendered the dismissal voluntary. Thus, Southern posits, the voluntary/involuntary rule does not preclude removal in this case. See Aetna Life & Cas. Co., 616 F.2d at 40 n.2 ("[P]laintiffs' failure to take an appeal constituted the functional equivalent of a 'voluntary' dismissal.").

But as our fellow circuits have observed, "[i]n most of the instances in which the Supreme Court has employed the voluntary-involuntary rule [to preclude removal], . . . the elimination of the resident defendants was not final at the time the issue of the propriety of removal was considered because the state appellate process as to those defendants was not complete." Insinga, 845 F.2d at 252-53 (discussing cases); see also Self, 588 F.2d at 658 (noting that the Supreme Court "apparently does not rely" on the finality of state court proceedings as a basis for the voluntary/involuntary rule).

Conditioning the "voluntariness" of a partial dismissal on a plaintiff's subsequent appeal would also make the removability of a case dependent on the intricacies of state appellate procedure. Sometimes a partial dismissal is not appealable when entered. See, e.g., Ramos v. Colón, 153 D.P.R. 534, 544 (2001) (a partial judgment "do[es] not become final sua sponte," and is not appealable unless final). Other times, it is. See, e.g., P.R. Laws Ann. tit. 32A, app. V, § 42.3 ("[T]he court may direct the entry of a final judgment as to one or more but fewer than all of

the claims or parties only upon an express determination that there is no just reason for delaying judgment on such claims until final adjudication of the case and upon an express direction for the entry of judgment.").  And sometimes, appealing right away may be optional.  See, e.g., Sanford v. CenturyTel of Mo., LLC, 490 S.W.3d 717, 723 (Mo. 2016) (en banc) ("[A] failure to appeal from any action or decision of the court before final judgment shall not prejudice the right of the party so failing to have the action of the trial court reviewed on an appeal taken from the final judgment in this case." (citation omitted)).  So a rule that conditions removability on the plaintiff forgoing an appeal would require a case-by-case parsing of state procedural intricacies, and hardly lend clarity to parties seeking to determine whether and when a case has become removable.

Moreover, even in a case in which it is clear that any appeal must be made within thirty days or be deemed waived, the waiver would not occur until thirty days after entry of the order said to make the case removable.  By that time it would be too late to remove under the thirty-day clock set by 28 U.S.C. § 1446(b).  One would instead have to argue that the waiver itself made the case removable, which would pile thirty days on top of thirty days.

Nor does Southern's argument have a logical endpoint.  Suppose a plaintiff appeals the dismissal of nondiverse

defendants, and the appellate court affirms the dismissal.  Is the plaintiff now required to move for reconsideration, or petition the forum's highest court, to preserve the involuntary nature of the dismissal?  Any such requirement would extend the uncertainty about the action's final venue.  We therefore decline to adopt Southern's proposed variation of the voluntary/involuntary rule, which is unsupported by either Supreme Court precedent or practicality.

## IV.

Finally, Southern asks us to find that the district court abused its discretion in denying the Rule 60(b) motion for relief from judgment.  As Southern points out, the district court based its remand order in part on Caribe's insistence that it intended to appeal the Commonwealth court's dismissal.  See Caribe Chem Distrib., Corp. v. S. Agric. Insecticides, Inc., Civ. No. 20-1547 (ADC), 2021 WL 5406563, at *2 & n.4 (D.P.R. Sept. 30, 2021).  Yet Caribe never did appeal.  But as we have just explained, our treatment of the dismissal of the nondiverse defendants as involuntary does not hinge on Caribe's appealing the order of dismissal entered over its objection.

## V.

We therefore affirm the district court's order remanding the case and further affirm its denial of Southern's motion to set aside the judgment under Rule 60.

- 14 -