ROOYAKKER & SITZ, PLLC v PLANTE & MORAN, PLLC

Docket No. 273173. Submitted April 10, 2007, at Lansing. Decided May
15, 2007. Approved for publication June 26, 2007, at 9:15 a.m.
Leave to appeal denied, 480 Mich ___.

Rooyakker & Sitz, PLLC, Mathew D. Rooyakker, George M. Sitz, and
Sandra K. Burns brought an action in the Otsego Circuit Court
against Plante & Moran, PLLC, Kevin Lang, and Michelle Carrol.
The plaintiffs sought a declaration that an agreement that Rooy-
akker, Sitz, and Burns had signed while employed by Plante &
Moran, and that contained a client solicitation clause and an
arbitration clause, was unreasonable and unenforceable. The
plaintiffs alleged, in part, that Lang and Carrol had interfered with
business expectations or relations and that Lang had defamed
Rooyakker and Sitz. The action had been brought after Plante &
Moran initiated arbitration proceedings against the individual
plaintiffs, alleging violation of the client solicitation clause of the
agreement. The trial court, Janet M. Allen, J., granted summary
disposition in favor of the defendants, ruling that the agreement
contained a valid and binding statutory arbitration clause. The
court dismissed the plaintiffs' claims of frustration of purpose and
fraud and reserved the remaining issues for arbitration. The
plaintiffs appealed.

The Court of Appeals *held*:

1. Section 5001(2) of the Michigan arbitration act, MCL
600.5001(2), provides that an agreement to arbitrate, to be an
irrevocable statutory arbitration agreement subject to the act, must
provide for a judgment of any circuit court to be rendered on the
arbitrator's award. The trial court did not err in determining that the
language of the parties' agreement providing for enforcement "by
any court having jurisdiction" was sufficient to meet the require-
ments set forth in § 5001(2) for a statutory arbitration agreement.

2. The trial court did not err in referring to arbitration the
issue whether the client solicitation clause violates the Michigan
Antitrust Reform Act (MARA), MCL 445.771 *et seq*. The parties
expressly agreed to arbitrate all disputes arising out of the
contract and the dispute whether the clause violates the MARA is
a dispute that arises out of the contract. The fact that the MARA

states that an action for violation of the act shall be brought in a circuit court does not preclude enforcement of the binding arbitration agreement.

3. The client solicitation clause is reasonable in relation to Plante & Moran's reasonable competitive business interests and, therefore, does not violate the MARA.

4. The court properly dismissed the claim of frustration of purpose on the basis that the conditions necessary for application of the frustration-of-purpose doctrine did not exist. The court also properly dismissed the claim of fraud in the inducement to sign the agreement on the basis that the plaintiffs failed to show that they reasonably relied on a material misrepresentation of future conduct by Plante & Moran.

5. The trial court did not err in determining that the broad language of the arbitration agreement vests the arbitrator with the authority to hear the plaintiffs' claims alleging tortious interference and defamation, even if they involve parties that were not parties to the agreement.

Affirmed.

1. ARBITRATION — STATUTORY ARBITRATION.

An agreement to arbitrate must provide for a judgment of any circuit court to be rendered upon the award made pursuant to the agreement in order to be a statutory arbitration agreement; language in an arbitration agreement providing that a judgment may be rendered upon the award by "any court having jurisdiction" may be found to provide for statutory arbitration (MCL 600.5001[2]).

2. ARBITRATION — MICHIGAN ANTITRUST REFORM ACT.

The Michigan Antitrust Reform Act provides jurisdiction for actions involving violations of the act in a circuit court where venue is proper; the act does not preclude parties to a contract from agreeing to arbitrate all claims arising out of the contract, including claims regarding a violation of the act (MCL 445.775).

3. ARBITRATION — SCOPE OF ARBITRATION.

The parties' agreement to arbitrate issues arising from the parties' contract generally determines the scope of the arbitration; a court should resolve all conflicts regarding whether an issue can be arbitrated in favor of arbitration, should not interpret the contract's language beyond determining whether arbitration applies, and should not allow the parties to divide their disputes between the court and the arbitrator.

*Michael T. Edwards* for the plaintiffs.

*Butzel Long, P.C.* (by *James J. Giszczak* and *Michael F. Smith*), for the defendants.

Before: SERVITTO, P.J., and TALBOT and SCHUETTE, JJ.

SCHUETTE, J. Plaintiffs appeal as of right[1] from the circuit court's September 8, 2006, order granting summary disposition in defendants' favor. We affirm.

## I. FACTS

This case arises out of the employment of the individual plaintiffs, Mathew D. Rooyakker, George M. Sitz, and Sandra K. Burns, with defendant Plante & Moran, PLLC, an accounting and business consulting firm, at its Gaylord office.

As a condition of the individual plaintiffs' employment, they each signed a "Practice Staff—Relationship Agreement" (agreement), which was drafted by Plante & Moran, and contained both a "client solicitation" clause and an "arbitration clause." The client solicitation clause states as follows:

> During the staff member's employment and during the two year period thereafter the staff member shall not, directly or indirectly, render professional accounting, tax, consulting or any other service provided by the Firm at the

---

[1] Defendants argue that this Court does not have jurisdiction over the instant action because the trial court's order was not a "final order" as defined by MCR 7.202(6)(a)(i). We disagree. MCR 7.202(6)(a)(i) defines "final order" as "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties . . . ." In this case, because there was nothing left for the trial court to decide and it did not state that it was retaining jurisdiction, we conclude that the trial court's order was a final order appealable as of right.

date of termination (whether voluntary or involuntary), other than as a bona fide, full-time employee of a client, to any Firm client.

If there is a breach of this Agreement, the former staff member shall pay to the Firm an amount equal to the greater of (a) the billings to such client by the Firm during the twelve month period immediately preceding the effective date of termination or (b) the average annual billings to such client by the Firm during the three year period preceding the effective date of termination. The payments are due to the Firm at the time the staff member first renders services to such client(s) of the Firm.

No breach will be deemed to have occurred if the staff member did not participate in any solicitation of such client or was not directly or indirectly responsible for the client becoming a client of the former staff member (or related entity) so long as the former staff member performs no professional services for such client within two years of termination from the Firm. The Firm, in its sole discretion, may waive or reduce the amount of the required payment for the breach upon consideration of the circumstances and effects of such waiver or adjustment. If the staff member requests, the Firm's Managing Partner (or designee) will meet and discuss such waiver or adjustment, without either party being further obligated.

For purposes of this Agreement, a "Firm Client" is any person or entity for whom the Firm was providing services of any kind at the time of the staff member's termination of employment or at any time during the 24 months preceding such termination and any successor or assign of any such person or entity.

The arbitration clause provides:

At the option of the Firm, any dispute or controversy arising out of or relating to this Agreement, may be settled by arbitration held in Oakland County, Michigan, following the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctive or other relief. The decision of the arbitrator will be final, conclusive and

binding on the parties. Judgment may be entered based on the arbitrator's decision in any court having jurisdiction. The Firm and the former staff member will each pay one-half of the arbitrator's costs and expenses, and each will separately pay their respective legal fees, expert fees and related expenses.

On July 13, 2005, the individual plaintiffs were informed that Plante & Moran had decided to close its Gaylord office. The individual plaintiffs were offered the opportunity to move to Plante & Moran's Traverse City office,[2] but they decided to remain in Gaylord, terminate their employment with Plante & Moran, and open their own office. The individual plaintiffs resigned from Plante & Moran and commenced working for plaintiff Rooyakker and Sitz, PLLC, on December 2, 2005. Plante & Moran officially closed its Gaylord office on February 3, 2006.

Several of Plante & Moran's Gaylord clients hired plaintiffs to provide accounting and tax services. When Plante & Moran learned or suspected that the individual plaintiffs were providing services to its former clients, it initiated arbitration proceedings against those plaintiffs for violation of the client solicitation clause contained in the agreement. In March 2006, Mathew Rooyakker and George Sitz received an arbitration demand from Plante & Moran, claiming that the amount in dispute was $140,000. Burns received a similar letter dated March 2, 2006, demanding payment of $4,545.

Plaintiffs filed a suit on March 20, 2006, seeking a declaration that the agreement was unreasonable and unenforceable, and alleging that defendants Kevin Lang and Michelle Carrol interfered with Rooyakker and Sitz's business expectations or relationships, and that

---

[2] Burns asserts that she was later informed that there was no position available for her in Traverse City.

Lang defamed Rooyakker and Sitz. On June 2, 2006, the parties filed cross-motions for summary disposition. Defendants moved for summary disposition under MCR 2.116(C)(7), (8), and (10), asserting that the claims arising out of the agreement should be arbitrated, and the remaining claims should be dismissed for lack of evidentiary support. Plaintiffs also moved for summary disposition,[3] contending that the parties' agreement was unenforceable because the client solicitation clause violated the Michigan Antitrust Reform Act (MARA), MCL 445.771 *et seq.*, and because its purpose had been frustrated by the closing of Plante & Moran's Gaylord office. The trial court heard oral arguments on June 23, 2006, and it took the matter under advisement. On September 8, 2006, the trial court issued its written opinion and order granting summary disposition in favor of defendants. It concluded as follows:

> The relationship agreement between the parties contains a statutory arbitration clause, because it is in writing and allows a circuit court to enter judgment based upon the decision of the arbitrator. A statutory arbitration clause may not be unilaterally cancelled. Thus, the agreement is binding on the parties.
>
> Further, the agreement is valid because no issue in this case rescinds or revokes the relationship agreement. Plaintiffs' claim under the Michigan Antitrust Reform Act fails due to the language of the act. There is insufficient evidence to support Sitz's claim that a misrepresentation was made. Even if a misrepresentation was made, it would have been a contractual promise of something on which Sitz could not have reasonably relied. Nor has the relocation of the Defendant firm frustrated the purpose of the agreement. Since no issues revoke or rescind the contract in its entirety, the parties' agreement to arbitrate is valid.

---

[3] Plaintiffs did not specify under which section of MCR 2.116 they were moving for summary disposition.

This Court must reserve all issues for arbitration that fall within the scope of a valid and binding arbitration agreement, while resolving all doubts in favor of arbitration and avoiding the bifurcation of disputes. The relationship agreement between the parties states that "any dispute or controversy arising out of or relating to" the agreement will be arbitrated. Plaintiffs' claim for tortious interference of business, defamation, excessive damages, and violation of the Michigan Antitrust Reform Act all arise out of or relate to the relationship agreement. Thus, this Court reserves these issues for arbitration.

For these reasons, and the reasons stated above, the Plaintiffs' Motion for Summary Disposition is denied. Defendant[s'] Motion for Summary Disposition is granted. Specifically, the Plaintiffs' claim of frustration of purpose and Plaintiff Sitz's fraud claim [are] dismissed. The remaining issues are reserved for arbitration.

Plaintiffs now appeal.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). Likewise, statutory interpretation is a question of law that this Court reviews de novo. *Reed v Yackell*, 473 Mich 520, 528; 703 NW2d 1 (2005). And a trial court's determination that an issue is subject to arbitration is also reviewed de novo. *Madison Dist Pub Schools v Myers*, 247 Mich App 583, 594; 637 NW2d 526 (2001).

### B. ANALYSIS

Plaintiffs argue that the trial court erred (1) in concluding that the parties' agreement is an irrevocable statutory arbitration agreement, (2) in referring to arbitration issues regarding the validity of the client

solicitation clause, and (3) in summarily dismissing plaintiffs' fraud and frustration-of-purpose claims. We disagree.

### 1. STATUTORY ARBITRATION

An agreement to arbitrate under the Michigan arbitration act (MAA), MCL 600.5001 *et seq.*, is valid, enforceable, and irrevocable except upon grounds that justify the rescission or revocation of any contract. *Wold Architects & Engineers v Strat*, 474 Mich 223, 230; 713 NW2d 750 (2006). Conversely, common-law arbitration agreements are unilaterally revocable before an arbitration award is made. *Id.* at 231.

To be an irrevocable statutory arbitration agreement subject to the MAA, the agreement to arbitrate must provide for a judgment of any circuit court to be rendered on the arbitrator's award. *Wold, supra* at 229. Indeed, MCL 600.5001(2) states as follows:

> A provision in a written contract to settle by arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, *and in which it is agreed that a judgment of any circuit court may be rendered upon the award made pursuant to such agreement,* shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract. Such an agreement shall stand as a submission to arbitration of any controversy arising under said contract not expressly exempt from arbitration by the terms of the contract. Any arbitration had in pursuance of such agreement shall proceed and the award reached thereby shall be enforced under this chapter. [Emphasis added.]

Here, the parties' arbitration clause states as follows:

> At the option of the Firm, any dispute or controversy arising out of or relating to this Agreement, may be settled

by arbitration held in Oakland County, Michigan, following the rules then in effect of the American Arbitration Association. The arbitrator may grant injunctive or other relief. The decision of the arbitrator will be final, conclusive and binding on the parties. Judgment may be entered based on the arbitrator's decision in any court having jurisdiction. The Firm and the former staff member will each pay one-half of the arbitrator's costs and expenses, and each will separately pay their respective legal fees, expert fees and related expenses.

We reject plaintiffs' argument that because the parties' arbitration clause does not state that a "circuit court" may render judgment upon the award, but rather states that judgment may be entered "in any court having jurisdiction," this is a common-law arbitration clause, and the trial court erred in concluding to the contrary.

While our Supreme Court in *Wold, supra* at 238, did state that "[p]arties wishing to conform their agreements to MCL 600.5001(2) must put their agreements in writing and require that a circuit court may enforce them," this holding does not preclude a finding that the parties' arbitration agreement in this case is statutory and binding. Unlike in *Wold,* where there was no language providing for enforcement of the arbitration award by a court, the parties' agreement in this case clearly provides for enforcement by a court, even if it does not specifically identify the circuit court. Further, Michigan courts have concluded that arbitration agreements with similarly broad language were statutory arbitration clauses. *Gordon Sel-Way, Inc v Spence Bros, Inc,* 438 Mich 488, 495; 475 NW2d 704 (1991) (stating that "[b]ecause the Spence/Sel-Way arbitration clause provides that judgment may be entered [in any court having jurisdiction] on the arbitration award, it falls within the definition of 'statutory arbitration,' and is

governed by MCL 600.5001 *et seq.*"); *Hetrick v David A Friedman, DPM, PC*, 237 Mich App 264, 269; 602 NW2d 603 (1999) (concluding that an arbitration agreement was statutory and irrevocable where it "included a provision for a judgment upon the arbitration award to be entered in a court having jurisdiction"). Moreover, Michigan public policy favors arbitration to resolve disputes, *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118, 128; 596 NW2d 208 (1999), so a finding that this is not a statutory arbitration agreement simply because it does not contain the words "circuit court" would seem contrary to that public policy. Therefore, we conclude that the trial court did not err in deciding that the language in the parties' agreement providing for enforcement by "any court having jurisdiction" was sufficient to meet the requirements set forth in MCL 600.5001(2) for a statutory arbitration agreement.

### 2. VIOLATIONS OF THE MARA

Plaintiffs allege that the agreement's client solicitation clause is a noncompetition agreement that violates § 2 of the MARA, MCL 445.772, and, therefore, is unenforceable.[4] Plaintiffs also assert that because § 5, MCL 445.775, conveys exclusive jurisdiction over violations of the MARA to the circuit court,[5] the trial court erred in referring to arbitration the issue whether the client solicitation clause in this case violates the MARA. Again, we disagree.

---

[4] Section 2 of the MARA states that "[a] contract, combination, or conspiracy between 2 or more persons in restraint of, or to monopolize, trade or commerce in a relevant market is unlawful." MCL 445.772.

[5] Section 5 of the MARA states, "An action for violation of this act shall be brought in a circuit court where venue is proper without regard to the amount in controversy." MCL 445.775.

"Michigan jurisprudence favors arbitration, and the employment context is no exception." *Rembert, supra* at 130. "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." *Mitsubishi Motors Corp v Soler Chrysler-Plymouth, Inc*, 473 US 614, 628; 105 S Ct 3346; 87 L Ed 2d 444 (1985). In *Rembert, supra* at 126, this Court upheld an arbitration agreement where an employee of a restaurant filed suit in circuit court claiming state-law, civil-rights violations. This Court stated that " 'if the Legislature wanted to preclude predispute agreements to arbitrate civil rights claims, it would have excluded such claims by name, just as it excluded collective bargaining agreements and certain real estate claims.' " *Id.* at 133, quoting *Rushton v Meijer, Inc (On Remand)*, 225 Mich App 156, 175; 570 NW2d 271 (1997); see also *Abela v Gen Motors Corp*, 257 Mich App 513, 522; 669 NW2d 271 (2003), quoting *Davis v Southern Energy Homes, Inc*, 305 F3d 1268, 1280 (CA 11, 2002) (stating that " 'a statute's provision for a judicial forum does not preclude enforcement of a binding arbitration agreement . . .' ").

Therefore, we conclude that the trial court did not err in referring this issue to arbitration. Just because the statute provides jurisdiction to the circuit court, it does not follow that it precludes arbitration. If the Legislature intended to exempt all antitrust actions from arbitration, it could have done so. Rather, because the parties expressly agreed to arbitrate all claims arising out of the contract, and the issue whether the client solicitation clause violates the MARA is a dispute

arising from the contract, this issue, by the parties' own agreement, is subject to arbitration.

Plaintiffs further argue that the client solicitation clause is a noncompetition clause, which violates § 2 of the MARA. Conversely, defendants assert that this is an antipiracy clause, likening the instant case to *Follmer, Rudzewicz & Co, PC v Kosco*, 420 Mich 394; 362 NW2d 676 (1984), and *Rehmann, Robson & Co v McMahan*, 187 Mich App 36; 466 NW2d 325 (1991), where similar clauses were upheld as reasonable. However, regardless of what the clause is titled, and although the trial court did not reach the issue,[6] we conclude that it does not violate the MARA because it is reasonable in relation to Plante & Moran's reasonable competitive business interests.

Section 4a(1) of the MARA provides as follows:

> An employer may obtain from an employee an agreement or covenant which *protects an employer's reasonable competitive business interests* and expressly prohibits an employee from engaging in employment or a line of business after termination of employment if the agreement or covenant is *reasonable as to its duration, geographical area, and the type of employment or line of business*. To the extent any such agreement or covenant is found to be unreasonable in any respect, a court may limit the agreement to render it reasonable in light of the circumstances in which it was made and specifically enforce the agreement as limited. [MCL 445.774a(1) (emphasis added).]

This Court recently addressed the issue whether a covenant not to compete violates the MARA in *St Clair Medical, PC v Borgiel*, 270 Mich App 260; 715 NW2d 914 (2006). In *St Clair Medical,* the plaintiff was

---

[6] "An issue not addressed by the trial court may nevertheless be addressed by the appellate court if it concerns a legal issue and the facts necessary for its resolution have been presented." *Sutton v Oak Park*, 251 Mich App 345, 349; 650 NW2d 404 (2002).

attempting to enforce an agreement with its former employee that stated that the employee would be unable to practice within seven miles of a clinic owned by the plaintiff for at least one year following the employee's termination of employment. *Id.* at 262. "To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *Id.* at 266. This Court held that the covenant was reasonable in relation to the situation because the doctor was not completely prevented from practicing medicine, he was merely unable to see patients of his former clinic within seven miles of the plaintiff's clinic for one year. Similarly, in this case, the clause merely prevents the individual plaintiffs from acting as accountants for former clients of Plante & Moran; it does not preclude them from performing accounting services.

Further, "[u]nder Michigan law, preventing the anticompetitive use of confidential information is a legitimate business interest." *Whirlpool Corp v Burns*, 457 F Supp 2d 806, 812 (WD Mich, 2006). In this case, plaintiffs acquired confidential information, because of the nature of the accounting profession, regarding both Plante & Moran and its clients. The clause only prohibited the individual plaintiffs from soliciting or providing services to Plante & Moran's clients for a two-year period. Therefore, the duration of the agreement was reasonable. The clause only prevents the individual plaintiffs from rendering the same services to Plante & Moran's former clients and not different services. And while the clause failed to specify a geographic area, the statute provides for the limiting of noncompetition clauses to render them reasonable. MCL 445.774a(1).

Therefore, we conclude that the client solicitation clause does not violate the MARA.

### 3. FRUSTRATION OF PURPOSE

Next, plaintiffs argue that the trial court erred in sending their frustration-of-purpose issue to arbitration because the court, not the arbitrator, must determine whether a contract that violates a statute or public policy is void. However, the trial court did not send this issue to arbitration, but, rather, properly dismissed plaintiffs' claim summarily.

The frustration-of-purpose doctrine provides an excuse for nonperformance of a contractual obligation. *Liggett Restaurant Group, Inc v City of Pontiac*, 260 Mich App 127, 133; 676 NW2d 633 (2003). Generally, the doctrine is "asserted where 'a change in circumstances makes one party's performance virtually worthless to the other, frustrating his purpose in making the contract.' " *Id.* at 133-134, quoting Restatement Contracts, 2d, § 265, comment a, p 335. While the Supreme Court has yet to consider the doctrine, this Court has in *Molnar v Molnar*, 110 Mich App 622; 313 NW2d 171 (1981).[7]

The following conditions must be met before a party may avail itself of the frustration-of-purpose doctrine:

> "(1) the contract must be at least partially executory; (2) the frustrated party's purpose in making the contract must have been known to both parties when the contract was made; (3) this purpose must have been basically frustrated

---

[7] In *Molnar*, this Court concluded that the changed circumstances in that case—the death of the parties' son before his 18th birthday—frustrated the purpose for which the divorce settlement, which included a provision that the husband pay partial mortgage payments for the home where his ex-wife and minor son lived, was entered. *Molnar, supra* at 623-627.

by an event not reasonably foreseeable at the time the contract was made, the occurrence of which has not been due to the fault of the frustrated party and the risk of which was not assumed by him." [*Liggett, supra* at 134-135, quoting *Molnar, supra* at 626.]

In this case, the fact that the Gaylord office could (or maybe even would) close was reasonably foreseeable at the time the parties signed the agreement. Indeed, Sitz stated during his deposition that at his interview, Rooyakker presented him with a "three-year let's try to keep the office from not closing plan." And he also acknowledged that he believed that Plante & Moran was at least considering closing the Gaylord office on August 30, 2004, even before he signed the agreement. Further, we agree that Plante & Moran's closing of the Gaylord office did not necessarily frustrate the purpose of the agreement—protecting its client relationships. As the trial court pointed out, "[n]othing prevents an accounting firm from servicing clients who live an hour away." Therefore, we conclude that the trial court did not err in summarily dismissing plaintiffs' frustration-of-purpose claim.

### 4. FRAUD IN THE INDUCEMENT

Plaintiffs also argue that the trial court erred in dismissing George Sitz's fraud claim because its decision was premature, given that discovery was still open on this issue, and because a genuine issue of material fact exists regarding whether Sitz was fraudulently induced to sign the agreement. Again, we disagree.

" 'Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete. However, summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual

support for the opposing party's position.' " *Oliver v Smith*, 269 Mich App 560, 567; 715 NW2d 314 (2006), quoting *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 24-25; 672 NW2d 351 (2003) (citations omitted); see also *Mable Cleary Trust v Edward-Marlah Muzyl Trust*, 262 Mich App 485, 506-507; 686 NW2d 770 (2004), quoting *Colista v Thomas*, 241 Mich App 529, 538; 616 NW2d 249 (2000) (stating that "a ruling on a motion for summary disposition is appropriate 'if there is no reasonable chance that further discovery will result in factual support for the nonmoving party' ").

In *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006), this Court recently reiterated the requirements for a fraud-in-the-inducement claim, explaining as follows:

> "[I]n general, actionable fraud must be predicated on a statement relating to a past or an existing fact." *Samuel D Begola Services, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). However, "Michigan also recognizes fraud in the inducement . . . [which] occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Id*. To establish . . . fraud in the inducement, a party must show that

> "(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that is was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." [*Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 477; 666 NW2d 271 (2003), quoting *M & D, Inc v McConkey*, 226 Mich App 801, 806; 573 NW2d 281 (1997).]

Further, " '[f]raud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party.' " *Custom Data Solutions, supra* at 243, quoting *Samuel D Begola Services, supra* at 640.

Plaintiffs give cursory treatment to this issue and fail to allege a prima facie case of fraud in the inducement in their brief on appeal. Plaintiffs assert that Mathew Rooyakker's affidavit and further discovery would establish a genuine issue of material fact. However, they fail to indicate any facts in Rooyakker's affidavit, or other facts that further discovery might reveal, that would raise a genuine issue of material fact. In short, Rooyakker's affidavit alleges that Kevin Lang did everything to undermine the strategic and economic viability of the Gaylord office while representing to the individual plaintiffs that the office would remain open. But even if the allegations set forth in Rooyakker's affidavit are true, economic realities are such that one in the individual plaintiffs' shoes cannot reasonably rely on such representations. Changes in markets and economic conditions occur frequently, and one cannot reasonably expect an office, plant, or store that becomes not viable economically and not in the strategic interests of the owners to remain open. Therefore, we conclude that the trial court did not err in dismissing Sitz's claim of fraud in the inducement.

### 5. NONPARTIES TO THE AGREEMENT

Finally, plaintiffs argue that the trial court erred in sending to arbitration the claims involving Rooyakker & Sitz, PLLC, Kevin Lang, and Michelle Carroll because they are not parties to the agreement. However, plaintiffs failed to raise this argument below. Therefore, it is not properly preserved for appellate review. *McLean v*

*McElhaney*, 269 Mich App 196, 201; 711 NW2d 775 (2005). Nevertheless, we conclude that plaintiffs' argument fails.

Generally, the parties' agreement determines the scope of arbitration. See *Fromm v MEEMIC Ins Co*, 264 Mich App, 302, 305-306; 690 NW2d 528 (2004).

> "To ascertain the arbitrability of an issue, [a] court must consider whether there is an arbitration provision in the parties' contract, whether the disputed issue is arguably within the arbitration clause, and whether the dispute is expressly exempt from arbitration by the terms of the contract." *Huntington Woods [v Ajax Paving Industries, Inc (After Remand)*, 196 Mich App 71, 74-75; 492 NW2d 463 (1992)]. The court should resolve all conflicts in favor of arbitration. *Id.* at 75. However, a court should not interpret a contract's language beyond determining whether arbitration applies and should not allow the parties to divide their disputes between the court and an arbitrator. *Brucker v McKinlay Transport, Inc*, 454 Mich 8, 15, 17-18; 557 NW2d 536 (1997). Dispute bifurcation defeats the efficiency of arbitration and considerably undermines its value as an acceptable alternative to litigation. [*Id.*]

In this case, the broad language of the arbitration clause—"any dispute or controversy arising out of or relating to" the agreement—vests the arbitrator with the authority to hear plaintiffs' tortious interference and defamation claims, even if they involve nonparties to the agreement. Further, Michigan courts clearly favor keeping all issues in a single forum. *Detroit Automobile Inter-Ins Exch v Reck*, 90 Mich App 286, 289; 282 NW2d 292 (1979) (noting a strong public policy in Michigan in favor of arbitration as a single, expeditious means of resolving disputes, and that the policy in favor of this expeditious alternative to the judicial system is thwarted if all disputed issues in an arbitration proceeding must be segregated into arbitrable and

nonarbitrable categories). Therefore, we do not believe that the trial court erred in referring plaintiffs' tortious interference and defamation claims to arbitration because they arise out of or relate to the individual plaintiffs' past employment with Plante & Moran.

Affirmed.