# STATE OF MICHIGAN

# COURT OF APPEALS

JEN TAYLOR, INC.,

        Plaintiff/Counter-Defendant-
        Appellee,

v

CARTER FOWLER and SUSAN FOWLER,

        Defendants/Counter-
        Plaintiffs/Third-Party Plaintiffs-
        Appellants,

and

JEREMY UPLINGER,

        Defendant-Appellant,

and

JENIFER TAYLOR,

        Third-Party Defendant.

UNPUBLISHED
August 20, 2015

No. 321189
Allegan Circuit Court
LC No. 12-050577-CZ

Before: SERVITTO, P.J., and BECKERING and BOONSTRA, JJ.

PER CURIAM.

Appellants Carter Fowler, Susan Fowler, and Jeremy Uplinger appeal as of right the trial court's judgment in favor of plaintiff Jen Taylor, Inc. (JTI) and third-party defendant Jenifer Taylor (Taylor) declaring JTI the owner of two parcels of land previously owned by Carter and Susan Fowler and dismissing the Fowler's counter-claims against Taylor. We affirm.

This action concerns two parcels of real estate in South Haven, Michigan owned and resided upon by the Fowlers until 2010, as well as a lease for a cell phone tower located on one of the parcels. One parcel is a large property of over 100 acres which contained the cell phone tower and was known as the "farm" property, and the other is an approximately five-acre parcel on which a residence was located.

In 2006, Taylor began dating Lester Fowler, who was Carter and Susan's son. Taylor began living with Lester in 2008 on a parcel of Carter and Susan's ("the Fowlers") property that is not at issue in this action. In April 2009, the Fowlers transferred a lease agreement they had with New Cingular Wireless PCS on the cell phone tower to Taylor, a real estate agent. The Fowlers testified that they did so in order to avoid creditors and with the understanding that Taylor would sell the lease and use the proceeds to redeem the farm and five-acre parcels, which were in arrears and nearing foreclosure. According to the Fowlers, allowing Taylor to purchase the parcels in her name before the redemption period would protect the properties from creditors. Those properties were, in fact, foreclosed on in July 2009, with a one-year redemption period. Taylor sold the New Cingular cell tower lease to a third party for $95,000, the proceeds of which paid the selling price for the two parcels. On June 24, 2010, the Fowlers transferred the farm and five-acre parcels to JTI for $90,000.

On March 30, 2012, JTI served a notice to quit on appellants, and on May 2, 2012, filed a complaint alleging that appellants' tenancy was terminated and that JTI was entitled to possession. In a counter-complaint against JTI and third-party complaint against Taylor, the Fowlers alleged that Taylor, as representative of JTI, fraudulently induced them to convey the parcels to JTI by promising to reconvey them to the Fowlers once the parcels were no longer in danger from creditors, that JTI was unjustly enriched by obtaining title to the parcels, that Taylor breached fiduciary duties as a real estate salesperson to the Fowlers, that Taylor fraudulently induced them to transfer the cell tower lease to her, and that Taylor was unjustly enriched by the transactions at issue. The Fowlers sought to quiet title to the parcels in their names.

After a bench trial, the trial court concluded that the June 24, 2010, transfer was pursuant to a valid contract and that any agreement between the parties under which Taylor would reconvey the parcels to Carter and Susan was unenforceable under the statute of frauds. The trial court ordered that JTI was the owner of the farm and five-acre parcels free of any claims of appellants and that JTI could apply for an order of eviction against appellants if they did not vacate the premises.

"We review a trial court's findings of fact in a bench trial for clear error and we review de novo its conclusions of law." *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004). "The clear-error standard requires us to give deference to the lower court and find clear error only if we are nevertheless left with the definite and firm conviction that a mistake has been made." *Arbor Farms, LLC v GeoStar Corp*, 305 Mich App 374, 386-387; 853 NW2d 421 (2014) (quotation omitted).

Appellants first argue that the trial court erred in concluding that there was no fiduciary relationship between Taylor and the Fowlers. Our Supreme Court has defined a fiduciary relationship as "[a] relationship in which one person is under a duty to act for the benefit of the other on matters within the scope of the relationship. Fiduciary relationships—such as trustee-beneficiary, guardian-ward, agent-principal, and attorney-client—require the highest duty of care." *In re Estate of Karmey*, 468 Mich 68, 74 n 2; 658 NW2d 796 (2003), quoting *Black's Law Dictionary* (7th ed). "An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it." *Stephenson v Golden*, 279 Mich 710, 734-735; 276 NW 849 (1937) (quotation omitted).

Agent-principal relationships can be created by explicit agreement between the agent and principal, such as "where the agent expressly acknowledges the principal's actions and agrees to follow the principal's instructions . . . ." *Uniprop, Inc v Morganroth*, 260 Mich App 442, 445-446; 678 NW2d 638 (2004). Agent-principal relationships can also arise from implication. *AFP Specialists, Inc v Vereyken*, 303 Mich App 497, 507; 844 NW2d 470 (2014). When determining whether an implied agent-principal relationship exists, Michigan courts consider the relations of the parties pursuant to their agreements or acts. *St Clair Intermediate Sch Dist v Intermediate Educ Ass'n/Mich Educ Ass'n*, 458 Mich 540, 557; 581 NW2d 707 (1998). An agent-principal relationship exists where "one person acts for or represents another by his authority." *Id.* (quotation omitted). A fundamental aspect of the agent-principal relationship is the right of the principal "to control the conduct of the agent with respect to the matters entrusted to him." *Id.* at 558 (citation omitted). However, mere allegations of inexperience and reliance are insufficient to establish the existence of a fiduciary relationship. *Ulrich v Fed Land Bank of St Paul*, 192 Mich App 194, 196; 480 NW2d 910 (1991).

In this case, there is no indication that Taylor was the express or implied agent of the Fowlers with regard to the transfer of the New Cingular lease to herself, selling the lease, or using the proceeds from the sale to redeem the farm and five-acre parcels and transfer title of the parcels to JTI. *Uniprop, Inc*, 260 Mich App at 445-446; *AFP Specialists, Inc*, 303 Mich App at 507. There is no evidence that Taylor represented the Fowlers with regard to the sale and transfer of the lease or the parcels. *St Clair Intermediate Sch Dist*, 458 Mich at 557. To the contrary, evidence clearly indicates that Fowlers signed an assignment and assumption agreement giving all of the rights and liabilities under the lease to Taylor. *Id.* Therefore, when Taylor sold the lease, she was doing so on her own behalf. *Id.* Likewise, there is no indication that any fiduciary duty was created with regard to the transfer of the parcels to JTI. Evidence is clear and uncontradicted that the Fowlers signed a purchase and sale agreement and a deed transferring the parcels to JTI. There is no evidence that Taylor had any control over the parcels at all until they were conveyed to her, or that the Fowlers were directing Taylor's actions regarding the parcels as required for the establishment of an agent-principal relationship. *Id.* at 558. Though Carter Fowler testified that he could not have negotiated the sale of the New Cingular lease because he was not good with computers, and there was testimony that the Fowlers thought Taylor could get more money for the lease because of her expertise, mere allegations of inexperience and reliance are insufficient to establish the existence of a fiduciary relationship. *Ulrich*, 192 Mich App at 196. In sum, the trial court did not err in concluding that there was no fiduciary relationship between Taylor and the Fowlers. *Glen Lake-Crystal River Watershed Riparians*, 264 Mich App at 531.

Appellants next argue that the trial court erred in concluding that JTI was not unjustly enriched by acquiring the lease and the farm and five-acre parcels. The equitable doctrine of unjust enrichment requires a person who has been unjustly enriched at the expense of another to make restitution. *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006). Under this doctrine, the law implies a contract to prevent unjust enrichment "when one party inequitably receives and retains a benefit from another." *Id.* at 194. "However, a contract will be implied only if there is no express contract covering the same subject matter." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). Therefore, the doctrine of unjust enrichment does not apply "if there is an express contract *between the same*

*parties* on the same subject matter." *Morris Pumps*, 273 Mich App at 194 (quotation omitted, emphasis in original).

Here, it is undisputed that Carter and Susan signed an assignment of the New Cingular lease to Taylor. And, it is undisputed that they signed a purchase and sale agreement and deed transferring the farm and five-acre parcels to JTI. Because there were express contracts "*between the same parties* on the same subject matter[,]" *id.*, the doctrine of unjust enrichment does not apply. *Belle Isle Grill Corp*, 256 Mich App at 478. Therefore, the trial court did not err in holding that unjust enrichment did not apply to this action. *Glen Lake-Crystal River Watershed Riparians*, 264 Mich App at 531.

Next, appellants argue that the trial court erred in concluding that Taylor did not fraudulently induce Carter and Susan to convey the farm and five-acre parcels to JTI. Though an action of fraud must generally be predicated on a statement relating to a past or existing fact, Michigan recognizes a claim of fraud in the inducement, "[which] occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *Rooyakker & Sitz, PLLC v Plante & Moran, PLLC*, 276 Mich App 146, 161; 742 NW2d 409 (2007), quoting *Custom Data Solutions, Inc., v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006). A party must show the following to establish fraud in the inducement:

> (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Id.*, quoting *Belle Isle Grill Corp*, 256 Mich App at 477.]

Fraud in the inducement renders a contract voidable at the defrauded party's option. *Id.* at 162.

However, a claim of fraud in the inducement cannot be predicated on an alleged oral promise to reconvey property. *Poppe v Poppe*, 114 Mich 649, 650; 72 NW 612 (1897). In addition,

> [w]hen one conveys his property to another for the purpose of avoiding anticipated claims against him, he is not in position to invoke the aid of a court of equity to obtain a reconveyance. He does not come into court with clean hands, and equity leaves him to lie in the bed of his own making. [*Id.* at 651.]

Therefore, in this case, even if Taylor had induced Carter and Susan to convey the two parcels to her by means of promising them that she would reconvey them, there is no evidence that this promise was in writing and such an oral promise—as barred by the statute of frauds—cannot be a basis for a claim of fraudulent inducement. *Id.* at 650-651. Furthermore, because Carter and Susan admittedly transferred the two parcels to JTI for the purpose of "avoiding anticipated claims against" them, they did not come to the trial court with clean hands and were "not in position to invoke the aid of a court of equity to obtain a reconveyance." *Id.* at 651.

Appellants also argue that the trial court erred in concluding that there was valid consideration for the New Cingular lease to Taylor and the transfer of the farm and five-acre parcels to JTI. "[A] contract is an agreement, upon a sufficient consideration, to do or not to do a certain thing." *McInerney v Detroit Trust Co*, 279 Mich 42, 46; 271 NW 545 (1937). "The essential elements of a contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). For consideration to exist, "there must be a bargained-for exchange." *Gen Motors Corp v Dep't of Treasury, Revenue Div*, 466 Mich 231, 238; 644 NW2d 734 (2002). In other words, "[t]here must be a benefit on one side, or a detriment suffered, or service done on the other." *Id.* at 238-239 (quotation omitted). Generally, courts "do not inquire as to the sufficiency of consideration," and it has been said that "[a] cent or peppercorn, in legal estimation, would constitute a valuable consideration." *Id.* at 239 (quotation omitted). "[D]oing what one is legally bound to do is not a consideration for a new promise." *Doebler v Rogge*, 221 Mich 508, 511; 191 NW 200 (1922).

With regard to the New Cingular lease, although Carter testified that he and Susan transferred it to Taylor because Taylor agreed to sell the lease and use the proceeds of the sale to redeem the farm and five-acre parcels, there is no indication that a writing of this agreement exists. Moreover, although Taylor testified at trial that she intended to sell the lease and use the proceeds to redeem the parcels, there is no indication that Taylor admitted to having promised Carter and Susan that she would do so. Because this alleged agreement concerns the sale of an interest in land and because it was not in writing, under the statute of frauds, it was not binding. MCL 566.108 ("Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or some note or memorandum thereof be in writing . . . ."). However, as the trial court stated, Taylor took on the detriment of the liabilities of the lease when it was transferred to her (such as allowing an easement and access across to communication facilities and indemnifying New Cingular from any liability arising from the actions or failure of her to act or of her breach of the lease). Because this was a detriment that Taylor acquired in exchange for the benefits of the lease, the trial court did not err in concluding that it constituted valid consideration for the transfer. *Id.*; *Glen Lake-Crystal River Watershed Riparians*, 264 Mich App at 531.

With regard to the farm and five-acre parcels, it is undisputed that Carter and Susan transferred these parcels to JTI for the sum of $90,000. There is no question that $90,000 constitutes valid consideration for this transfer unless JTI was already legally bound to use that money to redeem the parcels before the parties agreed to the transfer. *Gen Motors Corp*, 466 Mich at 238; *Doebler*, 221 Mich at 511. JTI was not so bound because, as discussed *supra*, though Carter testified that he transferred the New Cingular lease because Taylor agreed to use the proceeds of the sale of the lease to redeem the parcels, Taylor never admitted that such an agreement existed and, because there is no evidence that the agreement was in writing, it was not binding. MCL 566.108. Therefore, JTI was not legally bound to pay the $90,000 to redeem the properties and that money constituted valid consideration. *Gen Motors Corp*, 466 Mich at 238. Because the $90,000 constituted valid consideration for the transfer and there is no dispute that the parties were competent to contract or that the agreements and obligations were mutual, the trial court did not err in concluding that the farm and five-acre parcels were conveyed to JTI through a valid contract. *McCoig Materials, LLC*, 295 Mich App at 694; *Glen Lake-Crystal River Watershed Riparians*, 264 Mich App at 531.

Finally, although appellants argue that Carter and Susan lacked donative intent to gift the lease and parcels to Taylor and JTI, the trial court did not address this issue and it was not a basis for the trial court's decision. Because the transfers occurred by way of a valid contract, this Court will not address the issue of donative intent.

Affirmed.

/s/ Deborah A. Servitto
/s/ Jane M. Beckering
/s/ Mark T. Boonstra