*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

2701 DETTMAN LLC,

       Plaintiff-Appellant,

v

RIGTV LLC,

       Defendant-Appellee.

UNPUBLISHED
June 13, 2024

Nos. 364495; 365842
Jackson Circuit Court
LC No. 2022-003032-CB

Before: MALDONADO, P.J., and K. F. KELLY and REDFORD, JJ

PER CURIAM.

These consolidated appeals arise from allegations of fraud. In Docket No. 365842, plaintiff, 2701 Dettman LLC, appeals by delayed leave granted[1] the trial court's order granting summary disposition in favor of defendant, RIGTV LLC, pursuant to MCR 2.116(C)(8) (failure to state a claim). In Docket No. 364495, plaintiff appeals as of right the trial court's order granting attorney fees and costs to defendant. We affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

This matter arises out of the sale of a commercial property, located in Jackson whereby plaintiff purchased the property from defendant for $4,500,000. The parties signed a Purchasing Agreement in November 2021 that authorized plaintiff to perform its own inspection of the property during the due diligence period. The contract also provided that at any time during the inspection period, in its sole and absolute discretion, plaintiff could send a termination notice if it found the property unsatisfactory.

---

[1] *2701 Dettman LLC v RIGTV LLC*, unpublished order of the Court of Appeals, entered November 16, 2023 (Docket No. 365842).

At the heart of this case is money owed to the property's tenant for tenant improvements. Before the parties agreed to this sale, the defendant and its tenant completed tenant improvements involving plumbing, HVAC, and electrical work. The improvements were necessary for the tenant, a licensed marijuana processor, to obtain an occupancy permit. Seller and tenant renegotiated the lease in Summer 2021, to be effective as of April 13, 2021, following the completion of the tenant improvements and prior to the sale to plaintiff. The lease provides, "On or before June 1, 2022, if Tenant has not defaulted under any of the terms of the Lease, Tenant may request reimbursement of the Tenant Improvement Allowance from Landlord . . . that shall not exceed $200,000."

The alleged misrepresentation that lead to this litigation was made during the due diligence period. During a tour of the property, plaintiff's representatives noticed "the tenant improvements," and defendant's representative, when asked, said that the improvements were complete and all allowances had been paid to the tenant. However, plaintiff's attorney subsequently sent a follow-up email in which he asked: "[T]he lease references a $200,000 tenant improvement allowance at paragraph 37. What is outstanding under this allowance? Buyer believes this has been closed out already with the tenant, but we need confirmation."

Later, the purchase agreement was amended to extend the inspection period for the following purposes:

> B. Purchaser has requested an extension of its Inspection Period for the sole limited purpose of receiving and reviewing: *(i)* the December 31, 2021 balance sheet of the Crossroads of Leoni Condominium Association (the "Association"); *(ii)* the 2022 budget of the Association; *(iii)* **a 2022 budget ("Budget") of expenses and reimbursements between the owners and Units 1 and 2 of Crossroads of Leoni prepared by Seller;** *(iv)* a letter from the Owner of Unit 2 of Crossroads of Condominium confirming the Budget; and *(v)* **an executed amendment to the Lease between Seller, as landlord, and JRM127, LLC, as tenant, with respect to Unit 1 of Crossroads of Leoni provided that Purchaser otherwise waives all other due diligence contingencies and the Inspection Period.** [Emphasis added.]

Unit 1 of Crossroads of Leoni was the unit leased by defendant's tenant, JRM127.

The sale closed on January 28, 2022, and plaintiff executed a waiver of conditions and contingencies, a closing certificate acknowledging purchasing the property in an "as-is, where-is" basis, an assignment and assumption of leases, and a covenant deed in which plaintiff agreed to take the property subject to the lease. On August 17, 2022, almost seven months after closing, plaintiff received an email from the tenant requesting confirmation that the $200,000 payment would be made in accordance with the lease agreement. This outstanding balance due by plaintiff under the lease trigged the lawsuit between the parties. Plaintiff filed a complaint in which it asserted fraud, innocent misrepresentation, and silent fraud. However, the complaint was ultimately dismissed when the lower court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(8). The court subsequently awarded attorney fees to the Defendant.

These appeals followed.

## II. SUMMARY DISPOSITION

### A. STANDARDS OF REVIEW AND GOVERNING LAW

A decision on a motion for summary disposition pursuant MCR 2.116(C)(8) is reviewed de novo. *Mendelson Orthopedics PC v Everest Nat'l Ins Co*, 328 Mich App 450, 457; 938 NW2d 739 (2019). "A motion under MCR 2.116(C)(8) tests whether the opposing party has failed to state a claim on which relief can be granted." *Id*. When reviewing such a motion, "this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Id*. (quotation marks and citation omitted). A motion "may be granted only where the claims are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Liang v Liang*, 328 Mich App 302, 310-311; 936 NW2d 710 (2019) (quotation marks and citation omitted).

Plaintiff brought claims of fraud, innocent misrepresentation, and silent fraud. In *Titan Ins Co v Hyten*, 491 Mich 547, 555-557; 817 NW2d 562 (2012), our Supreme Court delineated the elements of these three types of fraud:

> [T]he general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. . . .

> The doctrine of innocent misrepresentation is also well settled in Michigan, recognizing, by a long line of cases, that if there was in fact a misrepresentation, though made innocently, and its deceptive influence was effective, the consequences to the plaintiff being as serious as though it had proceeded from a vicious purpose, he would have a right of action for the damages caused thereby either at law or in equity.

> Silent fraud has also long been recognized in Michigan. This doctrine holds that when there is a legal or equitable duty of disclosure, a fraud arising from the suppression of the truth is as prejudicial as that which springs from the assertion of a falsehood, and courts have not hesitated to sustain recoveries where the truth has been suppressed with the intent to defraud. [Quotation marks, citations, and alterations omitted.]

"[F]raud and misrepresentation claims . . . require proof of reasonable reliance on a false representation." *DBD Kazoo, LLC v Western Michigan, LLC*, ___ Mich App___; ___ NW2d ___ (2024) (Docket No. 361299); slip op at 9.

B.  ANALYSIS

1.  INDEPENDENT DUTY TO INVESTIGATE

Plaintiff argues that the trial court erred by granting summary disposition because plaintiff reasonably relied on defendant's statement when completing the closing.  We disagree

Both plaintiff and defendant rely on *Titan*, a case that applies to sophisticated commercial parties.  Plaintiff stresses the Supreme Court's statement in *Titan* that:

> [A]lthough the doctrines of actionable fraud, innocent misrepresentation, and silent fraud each contain separate elements, none of these doctrines requires that the party asserting fraud prove that the fraud could not have been discovered through the exercise of reasonable diligence.  Stated differently, these doctrines do not require the party asserting fraud to have performed an investigation of all assertions and representations made by its contracting partner as a prerequisite to establishing fraud. [*Titan*, 491 Mich at 557.]

However, this "no duty to investigate" rule delineated in *Titan* does not apply here because plaintiff was obligated to conduct its own investigation under the terms of the Purchase Agreement.

In addition to *Titan*, plaintiff and defendant trade quotes from *Coosard v Tarrant*, 342 Mich App 620; 995 NW2d 877 (2022).  Plaintiff's main point regarding this case is that the "general rule has an important caveat: parties do not have an independent duty to investigate and corroborate representations unless they were presented with some information or affirmative indication that further investigation was necessary."  *Id*. at 637.  Defendant quotes *Cossard*: "[t]he critical inquiry [wa]s whether plaintiffs were *on notice of any particular reason* why it would have been unreasonable to forgo a survey as to this property transaction."  *Id*. at 638 (Emphases added).  In *DBD Kazoo*, ___ Mich App at ___; slip op at 10, this Court explained:

> Under Titan, it is true that a plaintiff does not have a duty to investigate the veracity of representations by conducting due diligence to discover falsity.  Titan, however, does not preclude a trial court from finding a plaintiff's reliance unreasonable if the plaintiff had actual knowledge and information that establishes its claimed reliance unreasonable.

The chronological order of the events in this case is critical  First,  the  parties  signed  a purchasing Agreement; second, the parties did a walkthrough of the property during which defendant's representative allegedly stated that the allowance was paid; third, plaintiff's attorney wrote an email to defendant requesting confirmation that the improvement allowance was paid; fourth, defendant did not respond to the email; fifth,  the parties agreed to extend the due diligence period in part to allow plaintiff to further investigate whether the allowance was paid; finally, the transaction closed.  The numerous events between the alleged misrepresentation and the closing of the transaction should have put plaintiff on notice that the tenant allowance needed to be

investigated further. Plaintiff failed to duly investigate, so its reliance of the statement was not reasonable.

Plaintiff argues that even if it did have a duty to further investigate defendant's statement during the walkthrough, plaintiff would still have reason to detrimentally rely on defendant's assurances. According to plaintiff, reliance was reasonable because defendant made an unequivocal statement that tenant improvements were paid for and because defendant failed to respond to plaintiff's email. However, a person cannot " 'close his eyes to that which others clearly see.' " *Titan*, 491 Mich at 562, quoting *Keys v Pace*, 358 Mich 74, 84; 99 NW2d 547 (1959). Moreover, *Cossard* stands for the proposition that when a party is presented with some information or affirmative indication that further investigation is necessary, then it "must have been reasonable to expect the buyer to discover a defect upon inspection, and it must also be reasonable for the buyer to conduct the inspection in the first place." *Cossard*, 342 Mich App at 638. Plaintiff's email to the seller, specifically asking for the confirmation of the payment for improvement expenses, is a supreme indication that plaintiff was aware that there might be an outstanding balance. Plaintiff should have been alerted to its need to investigate further when it did not get confirmation that any allowance owed was paid. Plaintiff cannot simply put aside its duty to exercise due diligence by using a "duty to disclose" concept as a shield for inaction, specifically when plaintiff is put on notice that there is a reason to investigate.

Therefore, the record supports the trial court's conclusion that plaintiff's reliance was not reasonable.

## 2. NO-RELIANCE CLAUSE

Plaintiff argues that the no-reliance clause does not protect defendant from a fraud claim in light of the timing and context of the transaction. We disagree

To sustain a claim of fraud, the plaintiff must have reasonably relied on the false representation. See *Nieves v Bell Indus, Inc*, 204 Mich App 459, 464; 517 NW2d 235 (1994). However, "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Id*.

The purchase agreement contained no-reliance provisions and disclaimed all representations or warranties pertaining to the property:

> Under no circumstances shall Seller be deemed to have made and Seller hereby disclaims any representations or warranties, either express or implied, as to any matter whatsoever pertaining to the Property, including, without limitation, land, soil conditions, buildings, structures, environmental condition of the land, building (including structural components) and site improvements, and systems within the interior or exterior of the building located on the Property and the adequacy, suitability or fitness of the Property for Purchaser's intended use, zoning, and compliance with existing building or zoning ordinance requirements.

> . . .

**Purchaser understands and agrees** that, except as otherwise expressly set forth in this Agreement and the Closing Documents, Seller has made no representations or warranties whatsoever with regard to the condition of the Property, or Purchaser's ability to use the Property for Purchaser's intended use.

. . .

**PURCHASER HEREBY EXPRESSLY ACKNOWLEDGES AND AGREES** THAT PURCHASER HAS OR WILL HAVE, PRIOR TO THE END OF THE FEASIBILITY PERIOD, THOROUGHLY INSPECTED AND EXAMINED THE PROPERTY TO THE EXTENT DEEMED NECESSARY BY PURCHASER IN ORDER TO ENABLE PURCHASER TO EVALUATE THE PURCHASE OF THE PROPERTY. PURCHASER HEREBY FURTHER ACKNOWLEDGES AND AGREES THAT PURCHASER IS RELYING SOLELY UPON THE INSPECTION, EXAMINATION, AND EVALUATION OF THE PROPERTY BY PURCHASER AND THAT PURCHASER IS PURCHASING AND SHALL ACCEPT THE PROPERTY AT CLOSING ON AN "AS IS", "WHERE IS" AND "WITH ALL FAULTS" BASIS, WITHOUT REPRESENTATIONS. [sic] WARRANTIES, OR COVENANTS, EXPRESS OR IMPLIED, OF ANY KIND OR NATURE. (Bold added)

Plaintiff agrees that it would be unreasonable to rely on precontractual representations when the contract contains an integration clause and a non-reliance clause. However, plaintiff contends that the representation was made during the due diligence period and occurred *after* the purchase agreement was signed. Additionally, plaintiff argues that the closing documents, which were signed after the statements were made, did not contain an integration clause or a no-reliance clause; therefore, reliance on these statements was reasonable. However, the documents provided to this Court directly contradict plaintiff's position:

(1) At closing, plaintiff signed Waiver of Conditions and Contingencies agreeing that it: "has been afforded a sufficient time within which to investigate the condition of" the Property; "waives all conditions and contingencies contained in the Agreement of Purchase and Sale dated November 18, 2021, as amended, with regard to the Property"; "accepts the property in an 'as is, where-is, with all faults' condition"; and "releases RIGTV, LLC . . . from all claims concerning the Property, all of which are deemed waived and satisfied." (2) At Closing, plaintiff signed a Closing Certificate, acknowledging purchasing the property on an 'as-is, where-is' basis." (3) At Closing, plaintiff signed an Assignment and Assumption of Leases, agreeing to "the covenants, agreements, and obligations of Assignor as landlord or lessor under the Lease which are applicable to the period and required to be performed from and after the date of this Assignment." (4) At Closing, plaintiff signed a Covenant Deed, agreeing to take the Property "[w]ith all tenements, hereditaments, and appurtenances to it" subject to certain enumerated "Permitted Exceptions" which expressly includes the Lease, and plaintiff again agreed that "Seller makes no representations or warranties, of any kind or nature whatsoever[] . . . concerning the condition of the title of the property prior to the date the seller acquired title."

-6-

Because these documents were signed *after* the misrepresentation and *after* the extended period of time specifically designated for an independent investigation, we disagree with plaintiff's argument that the statement regarding the tenant allowance was done post-contractually.

### 3. DUTY OF DISCLOSURE

Plaintiff argues that defendant committed silent fraud when it failed to disclose that the $200,000 allowance was not paid. We disagree.

"Suppression of facts and truths can constitute silent fraud where the circumstances are such that there exists a legal or equitable duty to disclose." *Mable Cleary Trust v. Edward–Marlah Muzyl Trust*, 262 Mich App 485, 500; 686 NW2d 770 (2004). Additionally,

> the plaintiff must show that the defendant suppressed the truth with the intent to defraud the plaintiff and that the defendant had a legal or equitable duty of disclosure. A plaintiff cannot merely prove that the defendant failed to disclose something; instead, a plaintiff must show some type of representation by words or actions that was false or misleading and was intended to deceive. [*Lucas v Awaad*, 299 Mich App 345, 363–364; 830 NW2d 141 (2013) (quotation marks and citations omitted).]

In this case, plaintiff fails to demonstrate that defendant's single statement and its nonresponse to an email were "intended to deceive." Moreover, even silent fraud requires a showing of reasonable reliance. See *DBD Kazoo*, ___ Mich App at ___; slip op at 9. As discussed above, the issue of the outstanding reimbursement could have easily been discovered if plaintiff had exercised its right to contact the tenant during the due diligence period.

Therefore, we conclude that the trial court did not err by concluding that plaintiff cannot establish silent fraud.[2]

### II. ATTORNEY FEES

Plaintiff argues that the trial court erred by awarding attorney fees. We disagree.

The proper interpretation of a contract and its legal effect are subject to de novo review. *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005).

---

[2] Plaintiff also argues that the trial court erred because plaintiff did not plead that it was fraudulently induced to enter into the initial purchase agreement. Rather, plaintiff asserts that it was fraudulently induced to close the transaction; therefore, the no-reliance and integration clauses did not preclude plaintiff's fraud claim. This is a retread of the fraud arguments addressed above. The elements of fraudulent inducement are the same as ordinary fraud, see *Rooyaker & Sitz, PLLC v Plante & Moran PLLC*, 276 Mich App 146, 161; 742 NW2d 409 (2007), and as has been discussed at length, plaintiff cannot establish reasonable reliance.

"When contract language specifically provides that in litigation concerning the contract, the prevailing party shall recover attorney fees, attorney fees are not special damages, and therefore are generally recoverable by the prevailing party even if there was no specific prayer for the recovery of attorney fees in the complaint." *Fleet Bus Credit v Krapohl Ford Lincoln Mercury Co*, 274 Mich App 584, 592; 735 NW2d 644 (2007). In this case the purchase agreement provided, in pertinent part:

> 22. LITIGATION. In the event of litigation between the parties with respect to the Unit, this Agreement, the Escrow Agreement, the performance of their respective obligations hereunder of the effect of a termination under this Agreement or the Escrow Agreement, the losing party shall pay all reasonable costs and expenses incurred by the prevailing party in connection with such litigation, including, but not limited to, reasonable attorneys' fees of counsel selected by the prevailing party.

Plaintiff does not argue that the fees are unreasonable. Rather, it argues that the fees should not have been awarded because the trial court erred by deciding in favor of the defendant. However, the court did not error by granting summary disposition in favor of defendant, and therefore, it properly granted an award of attorney's fees.

In conclusion, because the court did not err by granting summary disposition, it likewise did not err by awarding attorney fees.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Kirsten Frank Kelly
/s/ James Robert Redford

-8-